**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Horace SHAW, Defendant–Appellant.**

**No. 94–5460.**

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1995.

Decided Nov. 30, 1995.

**ARGUED:** Gerald Chester Ruter, Baltimore, Maryland, for Appellant. James G. Warwick, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

Before WILKINSON, NIEMEYER, and HAMILTON, Circuit Judges.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WILKINSON and Judge HAMILTON joined.

## OPINION

NIEMEYER, Circuit Judge:

A jury convicted Horace Shaw of federal drug crimes in part with transcribed testimony from an earlier trial of Shaw's co-conspirator. That testimony had been given by two witnesses who died before Shaw's trial. On appeal, Shaw challenges the admission of this testimony on the grounds that it violated the hearsay rule and his rights under the Confrontation Clause of the Sixth Amendment. Because we conclude that the challenged testimony possessed sufficient circumstantial guarantees of trustworthiness such that cross-examination of the witnesses at Shaw's trial would have been of marginal utility in testing the accuracy of the evidence, we affirm Shaw's conviction.

I

In 1989, the Grand Jury in the District of Maryland returned a six-count indictment charging Jonathan Branch and Horace Shaw with various counts of conspiring to distribute and distributing heroin and cocaine. Shaw was named a defendant in one conspiracy count and one distribution count.

Branch was arrested, tried, and convicted in October 1990, and we affirmed his conviction. *United States v. Branch,* 970 F.2d 1368 (4th Cir.1992). Shaw, however, remained a fugitive until his arrest in December 1993, more than three years later.

At Branch's trial, the government called Linda Harding and Wallace Adams as witnesses. Harding testified under a grant of immunity, and Adams, pursuant to a plea agreement.

Harding lived with Barry Judd, an unindicted co-conspirator, and had two children with him. Harding and Judd lived together in Texas, New York, and, finally, Baltimore, where they resided with Shaw for a time. Harding testified at the Branch trial that she witnessed Shaw cut and package sizeable quantities of heroin on three separate occasions and observed Shaw count large sums of money. Harding also testified that the conspirators referred to Shaw's apartment at 3401 Oakfield Avenue as the "office" because it was one of the central locations where the group counted its money and divided drugs. That apartment became the focus of police surveillance and, later, a wiretap. Harding died in an automobile accident before the Shaw trial.

In his testimony at the Branch trial, Adams detailed his activities in supplying heroin from New York to the conspirators in Baltimore. While only referring to Shaw peripherally, Adams testified that he had been to Shaw's apartment and knew Shaw as a gambler who "hung out" with other members of the conspiracy. Adams also identified Shaw in photographs. Before Shaw's trial, Adams died from an illness.

Also before the Shaw trial, the government filed a motion *in limine* under Federal Rules of Evidence 804(b)(1) [1] and 804(b)(5) [2] for the admission of Harding's and Adams' testimony given at the Branch trial. The government argued that the testimony was relevant, trustworthy, and important to its case against Shaw and that it should be admitted because the witnesses were unavailable. The government maintained further that excluding the testimony of witnesses who became unavailable during the more than three years that Shaw willfully evaded capture would not serve the interests of justice. Shaw objected that the deceased witnesses' testimony lacked adequate guarantees of trustworthiness and, therefore, that Federal Rule of Evidence 802 and his Sixth Amendment right to confront and cross-examine the witnesses barred its admission. Shaw also argued that Harding "hated" him and that her bias

against him had not been adequately developed at the Branch trial.

In ruling the challenged testimony admissible, the district court found that it possessed sufficient indicia of reliability. The court also observed that other evidence in the case corroborated the deceased witnesses' testimony. Nevertheless, to permit Shaw to present evidence of Harding's bias against him, the district court allowed him to read portions of Harding's grand jury testimony that revealed her bias.

The jury convicted Shaw on both of the counts charged, and the district court sentenced him to 210 months imprisonment. This appeal followed.

## II

Shaw's sole argument on appeal is that the district court committed reversible error by admitting Harding's and Adams' testimony given at the Branch trial. He contends that the admission of the testimony violated Federal Rule of Evidence 802 and the Sixth Amendment Confrontation Clause.[3] The government's principal argument is that the challenged testimony possessed indicia of reliability sufficient to warrant its admission under Federal Rule of Evidence 804(b)(5) without denying Shaw's constitutional rights.[4]

---

1. Federal Rule of Evidence 804(b)(1) provides an exception to the hearsay rule when the declarant is unavailable, the hearsay testimony was given in a prior proceeding, and the party against whom the hearsay is offered "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

2. Federal Rule of Evidence 804(b)(5) provides a residual exception to the hearsay rule when the declarant is unavailable and the hearsay statement is important to the trial and bears prescribed "circumstantial guarantees of trustworthiness."

3. In addition to arguing that Harding's and Adams' testimony was untrustworthy, Shaw asserts in his brief without extended argument that the testimony was not the most probative evidence on the points for which it was offered at his trial. *See* Fed.R.Evid. 804(b)(5)(B). Shaw expressly waived this argument in the district court, however, and thus failed to preserve it for appeal. In any event, no other witnesses were available to provide the information that Harding's and Adams' testimony provided.

4. The government also argues that the statements were admissible under Federal Rule of Evidence 804(b)(1), the hearsay exception for former testimony of an unavailable declarant. But that rule allows prior testimony only when *"the party against whom the testimony is now offered ... had an opportunity ... to develop the testimony by direct, cross, or redirect examination."* Fed.R.Evid. 804(b)(1) (emphasis added). Shaw had no such opportunity. *See United States v. Clarke*, 2 F.3d 81, 83 (4th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1194, 127 L.Ed.2d 544 (1994). That Shaw was a fugitive from justice at the time of the first trial, a fact upon which the government relies, is, moreover, irrelevant to a decision under Rule 804(b)(1). *See United States v. Deeb*, 13 F.3d 1532, 1535–36 (11th Cir.1994) (rejecting government's argument that defendant forfeited his right to cross-examine witness by fleeing before trial), *cert. denied*, — U.S. —, 115 S.Ct. 1093, 130 L.Ed.2d 1062 (1995). Shaw's fugitive status, however, may be relevant to a ruling under Rule 804(b)(5), which requires the court to consider whether "the interests of justice will best be

Even though the underlying interests of both the hearsay rule and the Confrontation Clause demand the declarant's presence in court to permit his cross-examination, the various exceptions to the evidentiary rule and the constitutional stricture are not necessarily coterminous. *See Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638 (1990). Because the Confrontation Clause precludes "some evidence that would otherwise be admissible under an exception to the hearsay rule," *id.,* we must examine the district court's ruling in this case under both provisions.

■ Federal Rule of Evidence 802 prohibits generally the admission of out-of-court statements offered to prove the truth of the matters asserted. To admit hearsay under the residual exception created by Federal Rule of Evidence 804(b)(5), the district court must find that (1) the declarant is unavailable; (2) the statement bears circumstantial guarantees of trustworthiness equivalent to those that warrant the admission of hearsay under the other exceptions enumerated in Rule 804; (3) the statement relates to a material fact; (4) the statement is more probative on the point for which it is offered than any other reasonably obtainable evidence; (5) the interests of justice are served by the statement's admission; and (6) the offering party has provided the opposing party reasonable notice before trial of its intention to use the statement.

■ The Sixth Amendment Confrontation Clause guarantees a criminal defendant's right "to be confronted with the witnesses against him." While its literal interpretation would preclude virtually all hearsay from criminal trials, the Clause does not intend such an "extreme" result. *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). The Clause's underlying interest—to "augment accuracy in the fact-finding process by ensuring the defendant an

effective means to test adverse evidence," *id.* at 65, 100 S.Ct. at 2539—may be served even when the defendant cannot confront and cross-examine adverse witnesses. Hearsay may be admitted without violating a criminal defendant's Confrontation Clause rights if the prosecution establishes that the declarant is unavailable and that the evidence bears "indicia of reliability" sufficient "to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement.'" *Id.* at 65–66, 100 S.Ct. at 2539 (citations omitted) (quoting *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972)).

■ When evidence is admitted under a firmly rooted hearsay exception, a court can "infer[ ] without more" that it is sufficiently reliable to satisfy the Confrontation Clause. *Id.* at 66, 100 S.Ct. at 2539. But the Clause requires "a showing of *particularized* guarantees of trustworthiness" before all other hearsay can be admitted. *Id.* (emphasis added). This trustworthiness requirement—which serves as a surrogate for the declarant's in-court cross-examination—is satisfied if the court can conclude that cross-examination would be of "marginal utility." *Wright,* 497 U.S. at 820, 110 S.Ct. at 3149; *cf. United States v. Bumpass,* 60 F.3d 1099, 1102 (4th Cir.1995) (sufficient guarantees of trustworthiness for statement offered under Federal Rule of Evidence 804(b)(3) are established when "cross examination would add little to test the hearsay's reliability").

■ The issue in this case, therefore, is whether the government demonstrated that Harding's and Adams' statements were made under circumstances that guaranteed their trustworthiness such that cross-examination would have been of marginal utility in testing their accuracy.[5]

---

served by admission of the statement into evidence." Fed.R.Evid. 804(b)(5)(C).

5. We agree with Shaw that the district court erred to the extent that it looked beyond the immediate circumstances of the deceased witnesses' statements to other corroborating evidence in the record. Trustworthiness must emanate from the circumstances of a hearsay state-

ment, not from its consistency with other evidence offered in the case. *See Wright,* 497 U.S. at 822–23, 110 S.Ct. at 3150–51. Because we find that the district court needed to look no farther than the circumstances of the challenged statements for sufficient guarantees of their trustworthiness, however, any error in the court's approach was harmless.

## III

■ The Branch trial, at which Harding and Adams testified, involved the same transactions as those involved in the Shaw trial. Harding and Adams testified at the Branch trial under oath and in the presence of a judge and jury. Moreover, because Branch and Shaw were coconspirators charged with the same criminal conduct, Shaw's interest in undermining the deceased witnesses' testimony was effectively represented by Branch's counsel when he cross-examined Harding and Adams.

The Branch trial transcripts reveal that Branch's counsel took full advantage of his opportunity to cross-examine Harding and Adams. He grilled Harding about small inconsistencies in the details of her trial and grand jury testimony, her history of drug use, her participation in the drug conspiracy, and her decision to cooperate with the police when her boyfriend Judd threatened to kill her. Similarly, Branch's counsel cross-examined Adams extensively about inconsistencies in his testimony, his drug use, his prior arrests, and his gambling.

The record further reveals that Harding and Adams withstood the vigorous questioning by Branch's counsel and testified consistently on direct and cross-examination. This provides, in our judgment, substantial indicia of trustworthiness and supports our conclusion that cross-examination by Shaw's counsel would have been of marginal utility. *See United States v. Deeb,* 13 F.3d 1532, 1540–41 (11th Cir.1994) (recognizing that for Sixth Amendment purposes, cross-examination by co-conspirator can, in some situations, effectively substitute for cross-examination by defendant), *cert. denied,* —— U.S. ——, 115 S.Ct. 1093, 130 L.Ed.2d 1062 (1995).

We are also persuaded by the government's argument that both Adams and Harding faced significant disincentives to lie when they testified at the Branch trial. Harding had been granted immunity from further prosecution in return for her testimony, and Adams testified under a plea agreement that required, as one of its conditions, that he testify truthfully.

■ Shaw argues that Harding's grand jury testimony that she "hated" him provided an additional reason for distrusting the testimony she gave at the Branch trial. According to Shaw, Harding hated him because he had informed Judd that Harding had been "sleeping around" with other men and that Harding had abandoned and neglected their children. Because Shaw "caused violent arguments" between Judd and Harding, he contends that Harding was "out to get" him. Shaw maintains that while he would have focused his cross-examination of Harding on her alleged vendetta against him, Branch's counsel failed to develop Harding's bias against Shaw because he had neither the knowledge nor the motivation to do so.

While Harding's bias against Shaw might have proven an important focus of her cross-examination if she had been available at Shaw's trial, Harding's testimony at the Branch trial did not focus on Shaw. There is no evidence in the record indicating that Harding attempted to target Shaw or to exaggerate his role in the drug conspiracy. Indeed, Harding did not have occasion to testify extensively against Shaw; she only mentioned Shaw's activities in passing, and her testimony about Shaw does not stand out in comparison with her descriptions of Shaw's co-conspirators.

In short, there is no evidence that the trustworthiness of Harding's testimony was compromised by any bias she may have had against Shaw. On the contrary, taken as a whole, the context and substance of Harding's testimony give it "the ring of reliability." *United States v. Clarke,* 2 F.3d 81, 85 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1194, 127 L.Ed.2d 544 (1994). Notwithstanding the adequate circumstantial guarantees of trustworthiness surrounding Harding's testimony, Shaw was given the opportunity at his trial to present evidence of Harding's bias against him.

We conclude, therefore, that the district court neither abused its discretion nor violated Shaw's Sixth Amendment rights by admitting the testimony that Harding and Adams

gave at the Branch trial. Accordingly, we affirm Shaw's conviction.

*AFFIRMED.*