**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4739

RICO LAMONT SPURLOCK,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CR-95-29)

Argued: June 6, 1997

Decided: September 5, 1997

Before MURNAGHAN, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Stuart Bruce, Acting Federal Public Defender,
Greensboro, North Carolina, for Appellant. Zelda Elizabeth Wesley,
Assistant United States Attorney, Wheeling, West Virginia, for
Appellee. **ON BRIEF:** William D. Wilmoth, United States Attorney,
Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Rico Lamont Spurlock of attempted possession of crack cocaine with the intent to distribute and the district court sentenced him to 235 months imprisonment. On appeal, Spurlock challenges the refusal to suppress his post-arrest statement, the admission of grand jury testimony of an unavailable witness, the sufficiency of the evidence, and the prosecutor's closing argument. Finding no reversible error, we affirm.

I.

On September 28, 1995, Brian Smith was stopped for speeding; a legal search of his car uncovered approximately 760 grams of crack cocaine. Smith was arrested and quickly entered into a plea agreement with the Government. Smith agreed to set up a controlled delivery of the 760 grams of crack to Spurlock. Accordingly, that night Smith made a police-monitored telephone call to Spurlock. Pretending that his car had broken down, Smith asked Spurlock to meet him at a rest stop on Interstate 79. Smith told Spurlock he didn't want to "sit with that shit on me all night."

Spurlock arrived, and Smith, who was wearing a body wire, told him that the crack was hidden in (or near) a garbage can. Neither Spurlock nor Smith retrieved the crack from the garbage can, and as Spurlock turned to leave he was arrested. The arresting officers searched Spurlock and found $522.

Spurlock was indicted for conspiracy to possess with the intent to distribute crack cocaine and for attempted possession with the intent to distribute crack cocaine. See 21 U.S.C.§§ 841(a)(1) and 846 (1994). The jury convicted him of attempted possession, and deadlocked on the conspiracy count. Spurlock moved for a new trial and

2

judgment of acquittal. After the district court denied those motions, Spurlock appealed to this court. Spurlock raises four issues on appeal. We address these issues in order.

II.

First, Spurlock asserts that the district court erred in denying his motion to suppress statements made following his arrest.

When Spurlock was arrested at the rest area on I-79 he was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). About an hour later, Agents Lowell J. Maxey and Brian K. Purkey transported Spurlock from the rest area on I-79 to the Weston Detachment of the West Virginia State Police. During the drive, Spurlock asked Agent Maxey what law he had violated. Agent Maxey advised Spurlock that he had been arrested for attempted possession of crack cocaine. Spurlock responded,

> You can't charge me with possession man, I never took possession of the shit. You got to catch me with the shit man before you can charge me with possession and I never took possession man. I knowed something was up with the dude man, you know what I mean. So you ain't got shit on me.

Spurlock moved to suppress this statement. The district court held a suppression hearing on the first day of the trial. After the court heard testimony from Agent Maxey, Agent Purkey, and Spurlock, it denied the suppression motion. The court found:"Agent Maxey simply responded to questions that the defendant asked him about what he was being charged with."

That finding was certainly not clearly erroneous. See United States v. Johnson, 114 F.3d 435, 439 (4th Cir. 1997) (We review "the district court's factual findings" concerning a suppression motion "for clear error."). Spurlock spontaneously asked the officers about his arrest charge and then volunteered his statement disputing the charge. These statements were uncoerced and not the result of any subtle interrogation. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . .

3

Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." Rhode Island v. Innis, 446 U.S. 291, 299-300 (1980) (quoting Miranda, 384 U.S. at 478); see also United States v. Wright, 991 F.2d 1182, 1186 (4th Cir. 1993). Consequently, the district court did not err in refusing to suppress Spurlock's statement.

III.

The second issue Spurlock raises on appeal is whether the district court erred in admitting the grand jury testimony of Brian Smith. "[W]e review the admission of hearsay statements for abuse of discretion." United States v. Ellis, 951 F.2d 580, 582 (4th Cir. 1991).

Before the grand jury, Brian Smith testified concerning Spurlock's involvement in a conspiracy to sell crack cocaine. Smith testified that he delivered crack from Richard Watts in Pittsburgh to Spurlock in Charleston. Smith related that he would telephone Spurlock, deliver the cocaine, and Spurlock would pay him $500. Smith also testified as to the details of his arrest and cooperation with the authorities.

After Smith was arrested he was released on a $10,000 bond. On Thursday, January 11, 1996 (five days before the first day of trial), an Assistant United States Attorney telephoned Smith, who was living with his parents in Pittsburgh. Smith stated that he had arranged for a friend to drive him to the trial and asked the prosecutor about travel money. The prosecutor responded that Smith would be subpoenaed and then receive a witness fee. A subpoena for Smith was issued and sent to Pittsburgh, but was never served on him. On the morning of the first day of trial, Monday, January 16, 1996, Smith's lawyer telephoned the prosecutor and indicated that Smith would arrive at the courthouse by 11:00 a.m. Smith never appeared, however, and despite a lengthy search by marshals, Smith was never located.

The next morning (on the second day of trial), the Government informed Spurlock and the court of Smith's absence, and moved to have Smith's grand jury testimony admitted into evidence under Federal Rule of Evidence 804(b)(5). The district court granted the Government's motion on January 18, 1996, and Smith's testimony was read into the record. Spurlock asserts that the district court's order granting the Government's motion was erroneous for three reasons.

4

A.

First, Spurlock maintains that Smith was not "unavailable." "`Unavailability as a witness' includes situations in which the declarant . . . is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." Fed. R. Evid. 804(a)(5). "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." Ohio v. Roberts, 448 U.S. 56, 74 (1980). "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." Id. (quoting California v. Green, 399 U.S. 149, 189 n.22 (1970) (Burger, C.J., concurring)).

Spurlock argues that the Government took insufficient steps to produce Smith because there was no attempt to subpoena Smith until a week before trial and the subpoena was never served. We disagree. Although the Government never served Smith, it did prepare a subpoena and plan to serve him. The plea agreement required Smith to testify. Smith, who was released from jail on a $10,000 bail bond paid for by his parents, had testified willingly before the grand jury. Smith had never shown any hesitation about testifying at trial. Less than a week prior to trial the prosecutor talked with Smith and confirmed that he would testify. When Smith did not appear at trial, the marshals searched for him. In sum, the Government had no reason to fear that Smith would fail to testify at trial, and when he did not appear the prosecution made reasonable, good-faith efforts to locate him.

B.

Spurlock next argues that Smith's statement does not bear adequate indicia of reliability, as required by the Confrontation Clause. Idaho v. Wright, 497 U.S. 805, 814-15 (1990). The district court held that the statement contained sufficient indicia of reliability, reasoning:

> Brian Smith testified under oath before the grand jury. He was represented by an attorney. The facts that he recited in his testimony were those strictly within his personal knowledge and observation. . . . Moreover, his testimony regarding the events at the stop on I-79, [and] later events at the

5

rest stop were confirmed by every other witness who was involved in those events. The witness, Brian Smith, was out on bond secured by his parents who strapped themselves financially to procure his release on bond. He had entered into a plea agreement with the government which required him to be truthful. The fact that his testimony was within his personal knowledge and was corroborated by other individuals at trial and that it related to past facts is persuasive to this court . . . .

Spurlock correctly notes that insofar as the district court relied upon "the presence of corroborating evidence," such evidence "may not be considered in determining the reliability of hearsay testimony." Ellis, 951 F.2d at 582. As the Supreme Court has explained, "`particularized guarantees of trustworthiness' must be shown from the totality of the circumstances, [and] . . . the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." Wright, 497 U.S. at 819 (emphasis added). Trustworthiness must emanate from the circumstances of a hearsay statement, not from its consistency with other evidence offered in the case. Id. at 822-23. Consequently, the district court erred to the extent that it looked beyond the immediate circumstances of Smith's statements to other corroborating evidence in the record.

However, "[b]ecause we find that the district court needed to look no farther than the circumstances of the challenged statements for sufficient guarantees of their trustworthiness . . . any error in the court's approach was harmless." United States v. Shaw , 69 F.3d 1249, 1253 n.5 (4th Cir. 1995). There were several factors, inherent in the circumstances of the statement itself, supporting a finding of reliability. "First, [Smith] testified before the grand jury voluntarily. . . . Second, because [Smith] had participated with [Spurlock] in the narcotics offenses, he testified from personal knowledge." United States v. McHan, 101 F.3d 1027, 1038 (4th Cir. 1996) (citations omitted). Finally, Smith testified pursuant to a plea agreement which required truthfulness. See Ellis, 951 F.2d at 583 (witness testified pursuant to a plea agreement).

Spurlock's assertion that Smith's testimony was unreliable because of conflicts between the transcript of their phone call and Smith's

6

grand jury testimony is meritless. The only inconsistency involves the transcribed nicknames for Smith and Richard Watts. Watts was known as "Mook," but the transcript read "Milk;" Smith was known as "Beano," but the transcript read "B Note." This inconsistency is not substantive, and does not demonstrate that Smith likely lied before the grand jury.

C.

Spurlock contends that the Government did not provide the defense with sufficient notice of Smith's unavailability. Rule 804(b)(5) requires "the offering party [to] provide[ ] the opposing party reasonable notice before trial of its intention to use the statement." Shaw, 69 F.3d at 1253 (citing Fed. R. Evid. 804(b)(5)). In this case, the Government became aware of Smith's absence during the first day of trial, and immediately dispatched the authorities to track him down. When unsuccessful, the Government informed the court and Spurlock of Smith's absence first thing the next day. Because the Government notified Spurlock shortly after Smith failed to appear, and as soon as it became clear that he could not be found, the Government provided Spurlock with sufficient notice of the witness's unavailability. See United States v. Heyward, 729 F.2d 297, 299 n.1 (4th Cir. 1984) (holding that when "new evidence is uncovered on the eve of trial . . . advance notice is obviously impossible"); United States v. Baker, 985 F.2d 1248, 1253 n.3 (4th Cir. 1993) (holding that when "reasonable efforts" have been taken to locate an unavailable witness, and "pretrial notice was wholly impracticable," a court should grant "notice flexibility" under Rule 804(b)(5)).

IV.

Spurlock next argues that the Government produced insufficient evidence to support his conviction for attempt to possess crack cocaine with intent to distribute. "[C]hallenges to the sufficiency of the evidence must overcome a heavy burden . . . ." United States v. Neal, 78 F.3d 901, 906 (4th Cir.), cert. denied, 117 S. Ct. 152 (1996). "On review, we examine the evidence in the light most favorable to the government, considering circumstantial as well as direct evidence and allowing the government all reasonable inferences, to determine

7

whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." Id.

"[A] defendant can be convicted of an attempt only if the government proves beyond a reasonable doubt (1) culpable intent to commit the crime charged and (2) a substantial step towards the completion of the crime that strongly corroborates that intent." Id. There is sufficient evidence that Spurlock had the requisite intent and took a substantial step. Smith testified that he had delivered drugs to Spurlock in the past. Spurlock agreed to meet Smith at the rest stop after Smith said that he didn't want to "sit with that shit on [him] all night." Spurlock arrived with $522, and Smith testified that Spurlock typically paid him $500 for delivery of this quantity of crack. Thus, there was evidence of an existing relationship, and that Spurlock came to the rest stop to pick up drugs and to pay Smith for delivering them. This is sufficient evidence of both intent and a substantial step.

Spurlock maintains that he took no "substantial step" because he walked away from the deal without buying the crack. Spurlock argues that this case is analogous to United States v. Joyce, 693 F.2d 838 (8th Cir. 1982), where the Eighth Circuit held that there was no attempt to possess cocaine when a defendant's intention"to procure cocaine was abandoned prior to the commission of a necessary and substantial step to effectuate the purchase." Id. at 841. Even if Spurlock were correct that he abandoned his purpose to obtain the crack, there is enough evidence here of a substantial step prior to that abandonment to distinguish Joyce. In Joyce the potential purchaser had never before bought drugs from that supplier. Id. at 839-40. In this case Smith testified that he had delivered drugs to Spurlock before. As such, Spurlock's arrival at the rest area after the phone call with $500 to pay Smith for delivery was a substantial step.

V.

Finally, Spurlock maintains that the prosecutor impermissibly vouched for Smith's testimony. During closing argument the prosecutor stated "You heard one of the agents testify that the last thing we heard is that Brian was traveling here to testify on Tuesday. No one has seen or heard from him since." In fact, the agent had testified that Smith's lawyer's secretary had spoken to Smith on Tuesday morning.

8

No one testified that "last we heard Brian was traveling here to testify on Tuesday."

Spurlock failed to object to the prosecutor's argument, so we review for plain error. United States v. Adam , 70 F.3d 776, 780 (4th Cir. 1995). "To reverse for plain error, we must find that an error occurred, that the error was plain, that the error affected substantial rights, and that the error `seriously affected the fairness, integrity, or public reputation of the judicial proceedings.'" Id.

In Adam we applied the plain error standard to a claim of prosecutorial vouching and listed "several factors" relevant to a finding of prejudice:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Id. (quoting United States v. Harrison , 716 F.2d 1050, 1052 (4th Cir. 1983)). Under this standard it is clear that the district court did not commit plain error here. The prosecutor's remark was unlikely to mislead the jury or prejudice Spurlock because the remark was isolated, there was sufficient evidence of guilt absent the comment, the comment was not particularly deliberate, and likely did not divert the jury. In short, the comment had little, if any, harmful effect on Spurlock's trial.

AFFIRMED

9