**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                No. 97-4730

ALFRED BELL, a/k/a Prince Bell,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CR-96-24)

Submitted: October 20, 1998

Decided: December 31, 1998

Before NIEMEYER and WILLIAMS, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Martin P. Sheehan, SHEEHAN & NUGENT, Wheeling, West Vir-
ginia, for Appellant. William D. Wilmoth, United States Attorney,
Zelda E. Wesley, Assistant United States Attorney, Clarksburg, West
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Alfred Bell appeals his convictions and sentences for possession of crack cocaine and distributing crack cocaine, in violation of 21 U.S.C. § 841 (1994); conspiracy to possess with the intent to distribute crack cocaine, in violation of 21 U.S.C. § 846 (1994); use of a communication facility to facilitate the commission of a felony, in violation of 21 U.S.C. § 843(b) (1994); and interstate travel to promote an unlawful activity, in violation of 18 U.S.C. § 1952(a)(3) (1994). We affirm.

At trial, the Government introduced testimony from several individuals involved with Bell in the sale of crack cocaine. Alehya Stieff testified that she and Bell sold crack in West Virginia and that she often went with Bell to New York to obtain the crack. Stieff stated that she met Valerie Marable who agreed to sell crack for Bell in Morgantown, West Virginia. Stieff also testified that Linda Odum managed the Morgantown operation for Bell. David Dilliard testified that he met Bell through Linda Odum and that he agreed to sell crack for Bell. However, Dilliard and some friends smoked the crack they were to sell and Bell made Dilliard sell crack for him to pay back the drug debt. Terrance Jefferson testified that Bell had also asked him to sell crack. Linda Odum testified that she sold crack for Bell out of Marable's house and that Bell supplied her with crack from New York. Linda Odum also testified that Bell introduced her to Elijah Williams from whom she would buy crack at a special price for Bell. Further testimony established that Bell supplied the crack sold from Marable's home and that he also supplied Linda Odum.

On appeal, Bell asserts that the district court erred when it excluded the testimony of Elijah Williams. Williams' proffered testimony was that he never sold crack to Linda Odum and thus was not a source of crack for Bell. Because of the exclusion of Williams' testimony, Bell claims that he received an unfair trial and that the conspiracy charge

2

would have been dismissed otherwise. A district court's evidentiary rulings are reviewed for abuse of discretion. See United States v. Smith, 792 F.2d 441 (4th Cir. 1986).

We can assume without deciding that the exclusion of Williams' testimony was error, because any error was surely harmless. Though the source of the conspiracy's drugs was "relevant" to the case under Fed. R. Evid. 401's broad definition of the term, it was only marginally so. The central issue was the existence of a conspiracy to distribute cocaine, whatever the source, and on this point the evidence was considerable. In addition to Linda Odum, four other participants -- Valerie Marable, Alehya Stieff, Terrance Jefferson and David Dilliard -- testified that they either purchased crack from or sold crack for Bell. We are satisfied that the exclusion of Williams' testimony did not have a "substantial and injurious effect or influence in determining the jury's verdict," Kotteakos v. United States, 328 U.S. 750, 776 (1946); accordingly, there was no reversible error, if any error at all.

Bell next asserts that the district court erred by denying his motions for judgment of acquittal on the ground that the indictment lacked definiteness and by denying his requested jury instruction on the 18 U.S.C. § 1952 charge. Bell claims that the district court's actions denied him notice of the charges pending against him and prevented him from being tried by an "indictment by the grand jury." Bell asserts that the indictment charged an act of interstate travel from Uniontown, Pennsylvania to Morgantown and Fairmont, West Virginia, but that there was no evidence of a trip made from Uniontown. A review of the record shows that each count in the indictment contained the elements of the offense and apprised Bell of the pending charges. See United States v. Daniels, 973 F.2d 272, 274 (4th Cir. 1992). Further, there was extensive evidence that Bell traveled from Pennsylvania to West Virginia to sell drugs. Thus, the evidence was sufficient to establish the fact of interstate travel. See Glasser v. United States, 315 U.S. 60, 80 (1942).

A court's refusal to provide an instruction requested by a defendant constitutes reversible error only if the instruction: (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important that failure to give the instruction seriously impaired the defendant's ability to conduct

3

his defense. See United States v. Lewis, 53 F.3d 29, 32-33 (4th Cir. 1995). We find the court properly instructed the jury on the elements of 18 U.S.C. § 1952 and that Bell fails to establish prejudice.

Bell next asserts that the court abused its discretion by admitting the grand jury testimony of Carl Sims as substantive evidence under Fed. R. Evid. 804(b)(5). Bell claims that there were no particular guarantees of trustworthiness. This Court has consistently held that grand jury testimony that carries sufficient circumstantial guarantees of trustworthiness is admissible under Rule 804(b)(5); however, a reviewing court must still examine the statement for such guarantees of trustworthiness. See United States v. McHan , 101 F.3d 1027, 1038 (4th Cir. 1993), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3826 (U.S. June 16, 1997) (No. 96-8994).

Several factors demonstrate that the district court did not err in concluding that Sims' testimony bore sufficient guarantees of trustworthiness. See United States v. Shaw, 69 F.3d 1249, 1253 (4th Cir. 1995). Sims' testimony was clothed in some of the typical indicia of trustworthiness incumbent in a grand jury proceeding. See McHan, 101 F.3d at 1038. The testimony was given in the solemn setting of a grand jury hearing under oath, which carried with it the possibility of a perjury charge if Sims knowingly testified falsely. The grand jury was allowed to question Sims to explore his testimony and Sims testified voluntarily. Further, Sims' testimony was based on firsthand knowledge and remained internally consistent. Id. at 1038 (citing Dutton v. Evans, 400 U.S. 74, 88-89 (1970)). Thus, Bell fails to establish that the court erred in concluding that Sims' grand jury testimony was admissible.

Bell next asserts that the district court erred by admitting the in-court identification of Bell by Terrance Jefferson. Bell asserts that Jefferson had been shown a photograph of Bell during the investigation for identification purposes, thus prejudicing the proceedings. We find that the court did not abuse its discretion in allowing the in-court identification. Jefferson testified that he had seen Bell on six different occasions--once at Jefferson's home. Further, Jefferson was familiar with Bell because Bell approached him about selling drugs. Thus, Jefferson's identification was based on his familiarity with Bell and

4

was therefore admissible. See United States v. Morsley, 64 F.3d 907, 917 (4th Cir. 1995).

Bell next asserts that the court erred when it made an in camera review of Marable's social security records and presentence reports of government witnesses and failed to disclose the materials after determining that they did not contain exculpatory information. The district court's decision, after in camera inspection, denying defendant access to materials pertaining to a witness' credibility is reviewed for clear error. See United States v. Trevino, 89 F.3d 187, 193 (4th Cir. 1996).

Bell contends that the disclosure of Marable's infirmities or impairments would be probative of Marable's ability to perceive and to later testify truthfully concerning events that constituted the indictment. Following review of the documents, the district court determined that Marable's history of drug addiction would not likely be disputed at trial and any further documentary evidence of her addiction would not prove fruitful. Bell fails to establish that the district court erred in its determination that the records sought for disclosure were not appropriate for discovery.

Bell next asserts that the court should have dismissed the charges against him as violative of the Interstate Agreement on Detainers (the "Agreement"). The Agreement provides that when a person requests removal and disposition of a charge against him, he is required to be brought to trial within 180 days of his request for removal. Article III(a) of the Agreement requires that such a request must be delivered to the court and the prosecuting officer.

Bell claims that he satisfied the requirements of the Agreement when he delivered notice to the prison warden, whom he asserts is the statutory agent of the court. This argument was foreclosed by Fex v. Michigan, 507 U.S. 43 (1993), in which the Supreme Court held that "the 180-day time period in Article III(a) of the Interstate Agreement on Detainers does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and the prosecuting officer of the jurisdiction that lodged the detainer against him." Fex, 507 U.S. at 52. Thus, we find Bell's claims to be without merit.

5

Finally, Bell asserts that the court erred in denying his objections to the presentence report. Bell objects to the court's calculation of his relevant conduct and to the application of a two-level enhancement for possession of a firearm pursuant to U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (1997). A district court's findings of fact at sentencing are reviewed for clear error. See United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994).

At sentencing, the district court reviewed the trial record and adopted the presentence report in determining that Bell was responsible for 1.5 kilograms of crack cocaine. Further, the court found that based on the evidence presented at trial, a gun was involved in the conspiracy, though it was not clear which co-conspirator actually held the gun. After a defendant is convicted of a conspiracy count, he is responsible not only for his conduct but also that of his co-conspirators. See United States v. Williams, 986 F.2d 86, 90 (4th Cir. 1993). Thus, the court's findings are not clearly erroneous.

For these reasons, we affirm Bell's convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED