**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4664

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

v.

SEMYYA LANISE CUNNINGHAM,

       Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, District Judge.  (1:17-cr-00177-LO-1)

Argued:  January 31, 2019                Decided:  February 27, 2019

Before MOTZ, DUNCAN, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion, in which Judge Motz and Judge Quattlebaum concurred.

**ARGUED:**  John Marcus McNichols, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant.  Grace Lee Hill, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Geremy C. Kamens, Federal Public Defender, Todd M. Richman, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia; Stephen L. Wohlgemuth, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant.  G. Zachary Terwilliger, United States Attorney, Matthew Burke, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

A jury convicted Semyya Cunningham of multiple federal crimes arising from an alleged scheme in which she sought to obtain the proceeds of a life insurance policy without the policyholder's knowledge or consent. Cunningham contends that the district court erred in admitting certain statements by the deceased victim under Federal Rule of Evidence 807, the residual exception to the hearsay rule. Finding no abuse of discretion, we affirm.

I.

Cunningham worked as an insurance agent for the Western Reserve Life Assurance Company of Ohio, also known as the Transamerica Life Insurance Company ("Transamerica"). In April 2014, she sold an insurance policy to her childhood friend Kourtnee Green. The policy contained an "accelerated death benefit" option, which gave Green the right, if diagnosed with a terminal illness, to elect to receive a portion of the proceeds before her death. When Green enrolled in the policy, she selected her mother, Senoria Rogers, and her twin brother, Kasey Green, as the beneficiaries under the policy.

In July 2014, Green was diagnosed with terminal cancer and moved into her mother's residence in Surprise, Arizona. Rogers cared for Green until her death, including handling matters such as taking her to chemotherapy treatment and managing her finances.

After learning of Green's diagnosis, Cunningham changed the contact information and address on the policy to her own. She also changed the policy beneficiaries from

3

Rogers and Green's twin brother to two of Cunningham's friends. These friends acknowledged at trial that they were mere acquaintances of Green. In October 2014, Cunningham made a claim for payment of the accelerated death benefit. Transamerica paid the claim in January 2015, mailing a check for $182,131.75 to Cunningham's residence. Cunningham deposited these funds into Green's bank account. Cunningham then transferred the funds into her own bank account through a personal check, drawn on Green's account, which she later was alleged to have forged.

Several days later, Rogers learned of the substantial deposit and withdrawal on Green's account and asked Green about these transactions. Green replied that she did not know the source of the deposit, that she did not know why she was receiving the funds, and that she neither wrote nor provided the check drawn on her account to Cunningham (the "Rogers statements"). Rogers called Transamerica and alleged that Cunningham had committed fraud on Green's policy. This conversation was recorded.

In February 2015, Cunningham called Green. During the call, Green told Cunningham that she was unaware of the check that had been drawn on her bank account. Cunningham stated that she had withdrawn the money and asked Green to acknowledge that Green had signed both the Transamerica check and the subsequent personal check made out to Cunningham. Overhearing this conversation, Rogers told Green that if she lied on behalf of Cunningham by saying that she intended Cunningham to receive the proceeds, Green would have to go live with Cunningham or her twin brother.

Transamerica began investigating the alleged fraud following Rogers's call. Cheryl O'Donnell, a fraud investigator for Transamerica, interviewed Rogers and Green

4

during a phone call, which was not recorded. During the interview, Green stated that she did not change the contact information or beneficiaries under the policy; that the newly designated beneficiaries were friends of Cunningham's, not Green's; and that Green did not submit the claim for accelerated death benefit or transfer the proceeds to Cunningham (the "O'Donnell statements").

Green later signed several sworn forgery affidavits for her bank and insurance company. She and Rogers were also interviewed together by the local police, and Green again confirmed the forgery allegations.

In March 2015, Green changed the beneficiaries on the policy back to Rogers and her twin brother and submitted a claim for payment of the accelerated death benefit, which Transamerica approved. Six months later, Green died of cancer.

II.

Cunningham was indicted by a grand jury on two counts of mail fraud in violation of 18 U.S.C. § 1341, one count of wire fraud in violation of 18 U.S.C. § 1343, and two counts of engaging in monetary transactions in criminally derived property in violation of 18 U.S.C. § 1957. The indictment alleged that Cunningham engaged in a scheme to defraud whereby she sought to obtain the proceeds of a life insurance policy held by Green without Green's knowledge or consent.

Green died before the indictment and was therefore unavailable to testify at trial regarding her intent as to the policy proceeds. The government moved in limine to admit the Rogers and O'Donnell statements (collectively, the "statements") under Rule 807, the

5

residual hearsay exception. The district court held a hearing on this motion at which both Rogers and O'Donnell testified. The district court also considered various audio recording submissions from both parties, including the telephone conversation between Transamerica and Rogers in which Rogers claimed to be Green. In an oral ruling, the district court determined that the statements, although hearsay, were admissible under the residual hearsay exception.

The case proceeded to trial, and the statements were admitted into evidence through Rogers and O'Donnell. At the close of the government's case, Cunningham moved for a judgment of acquittal. The district court denied the motion, and the jury convicted Cunningham on all counts.

After the trial, the district court issued a written, supplemental order on its admission of the statements under the residual exception. In that order, the district court held that the government established its burden under Rule 807 to justify admission and explained its reasoning in reaching that decision.[1]

Cunningham was sentenced to a term of imprisonment of twenty-four months. This appeal followed.

### III.

A district court's ruling on the admission of hearsay under the residual exception is reviewed for abuse of discretion. *United States v. Shaw*, 69 F.3d 1249, 1254–55 (4th

---

[1] The district court's written decision is the decision referred to in this opinion.

Cir. 1995). If we determine that the court abused its discretion in admitting hearsay statements, we proceed to review that evidentiary ruling for harmless error under Federal Rule of Criminal Procedure 52. *United States v. Burfoot*, 899 F.3d 326, 341–42 (4th Cir. 2018); *United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997).

IV.

Cunningham contends that the district court erred in admitting the Rogers and O'Donnell statements under Rule 807's residual hearsay exception. Rule 807 is "a narrow exception" to the rule against hearsay that "should be utilized only after much consideration and examination." *United States v. Dunford*, 148 F.3d 385, 392, 394 (4th Cir. 1998) (internal quotation marks omitted). A court may admit hearsay under the residual exception only upon finding that (1) the hearsay has circumstantial guarantees of trustworthiness equivalent to those of the recognized exceptions, (2) it is offered as evidence of a material fact, (3) it is more probative than any other evidence that the proponent can reasonably obtain, and (4) admitting it will best serve the purposes of the Federal Rules of Evidence and the interests of justice. Fed. R. Evid. 807(a).

Cunningham's sole challenge is to the first element--that the statements have circumstantial guarantees of trustworthiness--which we have described as the "most important." *Dunford*, 148 F.3d at 393. In considering whether the district court abused its discretion in finding sufficient circumstantial guarantees of trustworthiness, we look to the "total context in which the statements were made." *Id.*; *see Idaho v. Wright*, 497 U.S. 805, 820 (1990) ("[T]he 'particularized guarantees of trustworthiness' required for

7

admission . . . must likewise be drawn from the *totality of circumstances* that surround the making of the statement and that render the declarant particularly worthy of belief.") (emphasis added).

On appeal, Cunningham first argues that it was error to admit the statements because they lacked circumstantial guarantees of trustworthiness. She further argues that the error was not harmless. As explained below, we reject Cunningham's first argument; we therefore need not reach the question of harmless error.

We conclude that the district court did not abuse its discretion in admitting the statements because they had circumstantial guarantees of trustworthiness. We find it useful to consider Cunningham's arguments in the context of the district court's reasoning regarding the statements' circumstantial guarantees of trustworthiness. We therefore summarize the district court's analysis before turning to whether the court abused its discretion in admitting the statements.

A.

The district court found that the Rogers statements were trustworthy in light of the totality of the circumstances in which they were made. In particular, the court emphasized the specific relationship that Green and Rogers shared. It observed that the mother and daughter shared a close relationship "[b]y all accounts." J.A. 204. Indeed, Rogers cared for Green for over a year as she battled cancer until Green's death, including by bathing her, preparing all of her meals in accordance with a special cancer diet book, managing her finances, and taking her to hours-long chemotherapy

8

appointments multiple times a week. The district court further noted that the statements were made in Rogers's and Green's mutual home.

The district court found that the O'Donnell statements were trustworthy as well. It reasoned that Green made these statements to notify Transamerica of a problem with her benefits. Therefore, she had an incentive to speak truthfully to ensure that the policy's proceeds were given to her beneficiary of choice and to avoid violating state and federal law.

The district court noted in particular that Green had "little if any motivation" to lie to either Rogers or O'Donnell about whether she intended Cunningham to receive the insurance benefits. J.A. 205. It expressly rejected Cunningham's arguments against admission of the statements. First, the district court rejected Cunningham's theory that the Rogers statements were not trustworthy because Green's will was overborne by Rogers, who had previously told Green that she would evict her if she lied on behalf of Cunningham. The court found that this statement was likely mere "bluster." *Id.* In any event, the district court reasoned, Cunningham presented no evidence to suggest that Green was persuaded to lie because of that alleged "threat" in light of evidence showing that Green "was willing and able to contradict her mother, as evidenced by their conversation with the Surprise, Arizona police department." *Id.*

Second, the district court rejected Cunningham's argument that the O'Donnell statements were not trustworthy because Rogers had previously impersonated Green in a phone call to Transamerica when Rogers initially reported fraud on Green's account. Upon listening to the audio recordings of that prior conversation, the district court

9

concluded that Rogers had correctly identified herself at the beginning of the phone call. The district court accepted Rogers's explanation that she failed to correct the insurance representative's misidentification of Rogers as Green later on during the call because Rogers was acting on Green's behalf, at her request, due to her weakened state. Consequently, the district court found that both statements had circumstantial guarantees of trustworthiness.

B.

Against the backdrop of the district court's analysis, we turn to Cunningham's various arguments as to why the district court abused its discretion. Cunningham argues that the district court erred by (1) discounting her version of events in favor of Rogers's and O'Donnell's, (2) considering Green's relationship with Rogers and the fact that the statements were made in an intimate setting, (3) admitting the statements where cross-examination of Green would be of more than marginal utility, and (4) relying on corroborating evidence to establish the statements' trustworthiness. We address each argument in turn.

First, Cunningham argues that the district court should have accepted her version of events over that of Rogers's and O'Donnell's. Regarding the Rogers statements, Cunningham points out that Green did not deny having given Cunningham the proceeds until Rogers discovered the policy and proceeds by accident. At that point, according to Cunningham, it would have been difficult for Green to tell Rogers that she had decided to give the proceeds not to her, but to someone outside her immediate family. With respect

to the O'Donnell statements, Cunningham contends that Rogers pressured Green to maintain this narrative in conversations with O'Donnell and threatened to evict Green if she contradicted Rogers.[2]  As summarized above, however, the district court considered and rejected each of these arguments, determining that Cunningham's account was not as credible as Rogers's or O'Donnell's.  And we find no basis for concluding that this determination was an abuse of discretion.

Second, regarding the Rogers statements in particular, Cunningham argues that the district court erred in crediting Green's close relationship with Rogers and the fact that the statements were made in an intimate setting, their mutual home, as a basis for the statements' trustworthiness.  In support of this argument, Cunningham cites the Eighth Circuit's decision in *United States v. End of Horn*, 829 F.3d 681 (8th Cir. 2016), for the proposition that a statement made to a former intimate partner is not inherently trustworthy.  Notwithstanding that *End of Horn* is not binding on this court, it is also distinguishable.  There, the district court "did not address why [the statement in question] had 'circumstantial guarantees of trustworthiness.'"  *Id.* at 686.  In contrast, the district court here gave several reasons for why the statement had circumstantial guarantees of trustworthiness and did not rely on the fact of the relationship alone as an indicator of

---

[2] The crux of Cunningham's argument both on brief and at oral argument is that the substantiated facts are fully consistent with her narrative of the events.  But this is not dispositive of the Rule 807 inquiry, and the district court did not abuse its discretion in declining to accept Cunningham's version of the events.  For example, the district court did not err in discrediting Cunningham's explanation for why she had changed Green's beneficiaries to two women who were not friends of Green and who later testified against Cunningham at trial.

11

circumstantial trustworthiness. Instead, as we have described, the district court thoroughly examined the circumstances surrounding the statements at issue and found--"in the total context in which the statements were made"--that they were worthy of belief. *Dunford*, 148 F.3d at 393. While it is true that the district considered, as part of this analysis, the fact that the Rogers statements were made in Green and Rogers's home, Cunningham offers no authority for the proposition that this consideration when combined with others is improper, let alone an abuse of discretion.

Third, Cunningham argues that under the residual exception, hearsay is not permitted where cross-examination of the absent speaker would be of more than "marginal utility." *See Shaw*, 69 F.3d at 1253 ("Th[e] trustworthiness requirement--which serves as a surrogate for the declarant's in-court cross-examination--is satisfied if the court can conclude that cross-examination would be of 'marginal utility'"). According to Cunningham, cross-examination of Green would have corroborated Cunningham's version of the facts: that Green was pressured by Rogers to say that she did not intend for Cunningham to receive the policy's proceeds, when in fact that was Green's desire. But as we recognized in *Shaw*, that cross-examination would be of only marginal utility is just one indicia of trustworthiness; it is not dispositive. *Id.* Indeed, in *Dunford*, we held that the statements at issue were admissible without addressing whether cross-examination would have been of marginal utility. 148 F.3d at 393–94. The fact that Green was unavailable for cross-examination and would have purportedly verified Cunningham's theory of the case, therefore, does not by itself provide a basis on which to find that the district court abused its discretion by admitting the statements.

12

Finally, Cunningham argues that the district court erred in relying on corroborating evidence to establish the statements' trustworthiness, when corroboration is not relevant to the trustworthiness inquiry and is therefore impermissible. *See Shaw*, 69 F.3d at 1253 n.5 ("Trustworthiness must emanate from the circumstances of a hearsay statement, not from its consistency with other evidence offered in the case."). Here, however, the district court anchored its findings in the specific circumstances surrounding each of the statements--not the statements' consistency with other evidence in the case. For example, the district court clarified that the Rogers statements were made once Green "learn[ed] that her bank account contained a deposit of approximately $180,000, and after subsequently learning that the money had been removed from the account via a check made payable to [Cunningham]." J.A. 202. The district court then went on to analyze the Rogers statements' trustworthiness in that specific context. In other words, the district court did not "look[] beyond the immediate circumstances of the deceased witnesses' statements to other corroborating evidence in the record." *Shaw*, 69 F.3d at 1253 n.5. Indeed, Cunningham fails to point to any portion of the district court's opinion suggesting that it did otherwise. Accordingly, this argument also fails.

Considering "the total context in which the statements were made," we therefore find that the district court did not abuse its discretion in finding sufficient circumstantial guarantees of trustworthiness. *Dunford*, 148 F.3d at 393. In admitting the Rogers statements, the district court considered the nature of Green's relationship with her mother, where the statements were made, and the circumstances at the time the statements were made. And in admitting the O'Donnell statements, the district court took

13

into account the lack of motivation Green had to lie to O'Donnell and, conversely, the incentive she had to speak truthfully to O'Donnell with respect to the policy's proceeds. Finally, the court considered Cunningham's counter-narrative and explained its reasoning for discounting her version of the events. Accordingly, we hold that the district court did not abuse its discretion in admitting the statements. We therefore need not address the question of whether the district court's decision constitutes harmless error.

V.

For the foregoing reasons, the district court's judgment is

*AFFIRMED*.