**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Hakki ADAM, a/k/a Baker Hakki Adam, Defendant–Appellant.**

No. 95–5454.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 25, 1995.
Decided Nov. 28, 1995.

**ARGUED:** Daniel E. Ellenbogen, The Robinson Law Firm, Washington, D.C., for Appellant. Andrea L. Smith, Assistant United States Attorney, United States Attorney's Office, Baltimore, Maryland, for Appellee. **ON BRIEF:** Kenneth Michael Robinson, The Robinson Law Firm, Washington, D.C., for Appellant. Lynne A. Battaglia, United States Attorney, Jamie M. Bennett, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and MURNAGHAN and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Justice POWELL and Judge WILLIAMS joined.

## OPINION

MURNAGHAN, Circuit Judge:

In August 1994, Dr. Hakki Adam, Appellant, was indicted on fourteen counts of violating 42 U.S.C. § 1320a–7b(b) (1988), under which it is illegal for any person knowingly to solicit or receive remuneration in return for patient referrals if payment for services is to be made in whole or in part out of federal welfare funds. At trial, the government argued that Appellant, an internist, received illegal kickbacks from a cardiologist with whom he shared office space, Dr. Merhdad Mostaan, from November 1988 until December 1991. The government contended that cancelled checks and ledger entries by Mostaan showed that, at first, Mostaan's payments to Appellant fluctuated greatly, depending on how many patients Appellant referred to Mostaan each month. Mostaan, who was granted immunity by the government, testified that, in an effort to regularize the payments and to make them appear legitimate, he and Appellant signed an agreement in early 1990 purporting to establish a leasing arrangement for Mostaan's use of Appellant's office and for equipment that Mostaan stored there.

Appellant contended at trial that all payments received from Mostaan were for rent. On appeal, Appellant further maintained that a letter purportedly written in February 1989, in which Appellant stated a desire to withdraw from an agreement to join with Mostaan in purchasing equipment, "demonstrates [Appellant's] withdrawal from any illegal arrangement with Mostaan and corroborates his defense that this was a standard lease arrangement with sloppy bookkeeping." [1]

The jury convicted Appellant on all fourteen counts. In January 1995, Appellant filed a motion for a new trial, claiming that he had received ineffective assistance of counsel. The court denied the motion.

Sentencing occurred in May 1995. Under the 1994 edition of the Federal Sentencing Guidelines, Appellant was assigned a base level of six. The level was then enhanced by nine: five pursuant to Guideline § 2F1.1(b)(1)(F) due to total losses of $50,000, two for abuse of a position of trust under Guideline § 3B1.3, and two for more than

---

1. Though Appellant never made his point explicit, his apparent contention was that the equipment-purchase agreement was intended to serve as a means of making kickback payments appear legitimate. In his brief, Appellant complains that his trial counsel should have called as a witness a paralegal who purportedly would have testified that Appellant did enter into a kickback scheme with Mostaan in late 1988, but then "had second thoughts in January 1989, and wrote the rescission letter in February 1989 withdrawing from the scheme." Appellant's Brief at 12.

minimal planning under Guideline § 2F1.1(b)(2). The district court sentenced Appellant to eighteen months in prison and ordered him to pay a $40,000 fine.

Appellant contends that he received ineffective assistance of counsel at trial, that the prosecutor made improper remarks during her closing argument, and that his sentence was improperly calculated. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## I. *Ineffective Assistance of Counsel*

■ Appellant's claim of ineffective assistance of counsel was raised in the district court as grounds for a Rule 33 motion for a new trial. We review the district court's denial of that motion only for abuse of discretion. *See United States v. Smith,* 62 F.3d 641, 650–51 (4th Cir. 1995).

■ Ineffective assistance claims are, of course, governed by the two-part test set out by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984): an appellant must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. With respect to the first requirement, an appellant must show that his attorney's performance "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. To meet the second requirement, an appellant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064. The *Strickland* Court further observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... [E]very effort [must] be made to eliminate the distorting effects of hindsight.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defen-

dant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

Appellant identifies several respects in which he believes that the performance of his trial counsel was deficient. He alleges that counsel negligently failed to introduce into evidence a letter dated February 1989 from Appellant to Mostaan purporting to rescind an agreement to purchase equipment; that counsel did not attempt to impeach the testimony of a government investigator by producing witnesses who would challenge the investigator's account of his conversations with Appellant; that counsel failed to call Appellant's and Mostaan's neighbor as a witness to impeach Mostaan's testimony; that counsel did not present available evidence (especially the testimony of Mostaan's and Appellant's accountant) that suggested that the parties regarded Mostaan's payments as rent; and that counsel did not offer as evidence various articles from which Appellant says he learned that kickback schemes are illegal.

■ With respect to these and all other claimed deficiencies, we do not believe that the district court abused its discretion when it found that Appellant was not deprived of effective assistance of counsel. Appellant's trial counsel testified that he perceived no relation between the February 1989 letter and the alleged kickback scheme and that, even if such a relation did exist, cancelled checks and Mostaan's ledger entries showed that payments continued long after the letter purportedly had been written. Counsel stated that he "very carefully considered" calling witnesses to counter the government investigator's testimony, but chose not to for reasons that he could not disclose without violating the attorney client privilege. Counsel said that he wanted "very badly" to call Mostaan's and Appellant's neighbor, Mali Sinai, as a witness, but that Appellant and Appellant's wife had insisted that she not be dragged into the case. Counsel testified that

he spoke with Ferhat Omer, Mostaan's and Appellant's accountant and tax-preparer, on two occasions and that during those conversations Omer told him that he believed the payments were for "consultation fees," and not for rent, leading counsel to choose not to call him as a witness. Finally, Appellant's trial counsel stated that he did not offer as evidence articles from which Appellant says he learned that kickbacks are illegal because to do so would have required putting Appellant on the witness stand—something that he did not want to do. In light of trial counsel's explanations and our own review of the record, we find that the district court's denial of Appellant's Rule 33 motion for a new trial did not constitute an abuse of discretion.

## II. *The Prosecution's Closing Argument*

Appellant contends that, during her closing argument, the prosecutor improperly revealed her personal opinions regarding the strength of the evidence and the credibility of the witnesses and improperly speculated about the nature of evidence that had been excluded by the court.[2]

■ Because Appellant did not object to those statements at the time they were made—a point that both parties concede—we must review only for plain error. *United States v. Brewer*, 1 F.3d 1430, 1434 (4th Cir.1993). To reverse for plain error, we must find that an error occurred, that the error was plain, that the error affected substantial rights, and that the error "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 1434–35 (quoting *United States v. Olano*, 507 U.S. 725, —— ——, 113 S.Ct. 1770, 1777–79, 123 L.Ed.2d 508 (1993)). Rather than look at isolated statements, the court must review the entire proceedings to see if the misconduct undermined the trial's fundamen-

tal fairness. *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir.1993).

■ With respect to claims of prosecutorial misconduct, an appellant must show that the remarks were improper and that they "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *Mitchell*, 1 F.3d at 240. Several factors are relevant to the determination of prejudice, including

(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*United States v. Harrison*, 716 F.2d 1050, 1052 (4th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984).

■ Under both the plain error and prosecutorial misconduct standards, Appellant's claim fails. Most of the remarks to which he objects merely use the phrase "I think" in an innocuous, conversational sense; they do not suggest an attempt to replace the evidence with the prosecutor's personal judgments. While it might have been preferable had several of the remarks not been made, we do not believe that any of the remarks affected the fundamental fairness and integrity of the proceedings. The comments were isolated, they did not tend to divert the jury's attention to extraneous matters, and they were made at the conclusion of a case in which the proof of guilt was significant.

■ Appellant also contends that the prosecutor improperly encouraged the jury to speculate about the nature of evidence that the trial judge had ruled inadmissible. Dur-

2. The statements about which Appellant complains include the following, among others: "I think that the evidence is clear." "I think Mrs. Adam's explanations of where the payments came from just don't add up." "I think that . . . shows you there's inconsistency in what [Mrs. Adam] was saying." "So I think that explains the pattern of referrals and the absence of other fee arrangements." "I think that's probably more of a testimony to their honesty than to Dr. Adam's innocence." "I'm not asking you to like Dr. Mostaan, but I am telling you that he is believable." "I think [the government investigator] did an excellent job, and I hope you'll agree with me." "So I think that the explanations were all over the board and just don't account for the discrepancy between the date of the lease agreements and the notary stamp."

ing the course of the trial, the judge ruled that the government investigator, Matthew Kochanski, could testify about the contents of Mostaan's ledgers, but could not testify about the conclusion which those numbers led him to reach—that the ledgers suggested a kickback scheme. In her closing argument, the prosecutor stated:

> You saw ... the judge [didn't allow Special Agent Kochanski to reach] any conclusions that it was in fact a kickback. So, if we hadn't had Dr. Mostaan's testimony to supplement that, that's where we would have been left: with Special Agent Kochanski's giving a very insightful explanation of the numbers, but unable to reach any conclusions, or to tell you what his conclusions were.

We do not believe that the prosecutor's remarks were sufficient to deprive Appellant of a fair trial.

### III. *Sentencing Issues*

Medicare fraud carries a maximum sentence of five years' imprisonment. 42 U.S.C. § 1320a–7(b) (1988). Under the 1994 edition of the Federal Sentencing Guidelines, Appellant was assigned a base level of six. The level was then enhanced by five pursuant to Guideline § 2F1.1(b)(1)(F) due to a loss of $50,000. The level was then enhanced by an additional four, two of which were for abuse of a position of trust under Guideline § 3B1.3.

### A. *Amount of Benefit as Amount of Loss*

■ This court's review of the district court's application of the Guidelines' loss provision must be conducted *de novo*. *United States v. Chatterji*, 46 F.3d 1336, 1340 (4th Cir.1995); *United States v. Bailey*, 975 F.2d 1028, 1030 (4th Cir.1992).

Sentencing Guideline § 2F1.1(b)(1) allows enhancement of a defendant's sentencing range according to the amount of loss suffered as a result of the defendant's conduct. Comment 8 to that provision states that "the loss need not be determined with precision," and that "[t]he offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss." U.S.S.G. § 2F1.1(b)(1), comment (8).

Appellant bases his argument primarily on *Chatterji*, in which the Fourth Circuit held that no actual, intended, or probable loss had resulted from the defendant's fraudulent submission of data to the Food and Drug Administration, and that the defendant's gain therefore could not be considered as a substitute measure of loss for purposes of applying Guideline § 2F1.1. The court stated:

> [T]he enhancement provided in § 2F1.1(b)(1) ... applies when a victim has suffered economic loss. A defendant's gain may be an appropriate estimate of loss only when there is some actual, intended, or probable loss. Because we have concluded that [the defendant's] conduct occasioned no such loss, gain may not be used as an alternative basis for calculating loss.

*Chatterji*, 46 F.3d at 1342.

Appellant argues that no losses were suffered as a result of his conduct, and that, under *Chatterji*, the district court therefore erred when it used his gain as a proxy for losses. The government contends that *Chatterji* is not controlling here because, as Congress recognized when passing the anti-fraud measures, losses are almost always incurred when welfare fraud occurs: taxpayers must pay higher costs when kickback schemes encourage physicians to provide unnecessary services, and competition is discouraged when a doctor makes more referrals to a single, co-conspiring physician than to physicians with lower rates or better services.

Though it is difficult to determine precisely the amount of the added costs that have been imposed as a result of the acts of a single physician, welfare fraud, taken as a whole, surely does impose enormous, unnecessary financial burdens on the American public. When Congress passed legislation in 1977 designed to stiffen penalties for welfare fraud and to impose several fraud-discouraging requirements on various parties, the House Ways and Means Committee reported:

> In whatever form it is found, ... fraud in these health care financing programs adversely impacts on all Americans. It cheats taxpayers who must ultimately bear the financial burden of misuse of funds in any government-sponsored program. It

diverts from those most in need, the nation's elderly and poor, scarce program dollars that were intended to provide vitally needed quality health services. The wasting of program funds through fraud also further erodes the financial stability of those state and local governments whose budgets are already overextended and who must commit an ever-increasing portion of their financial resources to fulfill the obligations of their medical assistance programs.

H.R. 95–393, 95th Cong., 1st Sess., pt. II, at 44 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3039, 3047.

■ Guideline § 2F1.1, especially as explained in comment (8), appears designed for just such circumstances: the amount of loss caused by Appellant's conduct cannot be determined with any certainty, but the amount of Appellant's gain is an available, alternative measure of estimating that loss. Moreover, in the instant case, the amount of Appellant's gain seems like a highly appropriate measure of the loss suffered by the American taxpayers, insofar as the dollars paid to Appellant represent dollars that Mostaan apparently did not need to receive from federal funds in order to cover the costs of the care he provided. The dollars paid to Appellant, in other words, are dollars that were needlessly drained from the Medicare system.

We therefore find *Chatterji* distinguishable and affirm the district court's decision to apply the loss-enhancement provision.

## B. *Abuse of Position of Trust*

■ We must examine the district court's application of the Guidelines' abuse-of-trust provision only for clear error. *United States v. Helton*, 953 F.2d 867, 869 (4th Cir.1992).

Sentencing Guideline § 3B1.3 provides that "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense," his or her sentencing range should be enhanced by two levels. The Official Commentary to that provision states that, with the phrase "position of public or private trust," the Guidelines are intended to refer to positions "characterized by professional or managerial discretion (i.e. substantial discretionary judgment that is or-

dinarily given considerable deference)." U.S.S.G. § 3B1.3, comment (1). Comment (1) also states that "[p]ersons holding such positions ordinarily are subject to significantly less supervision than [other] employees," and that, for the provision to apply, the position must have significantly aided the offender, such as "by making the detection of the offense ... more difficult." *Id.* The Ninth Circuit has declared, in light of the Official Commentary, that "[t]he primary trait that distinguishes a person in a position of trust is the extent to which the position provides the freedom to commit a difficult-to-detect wrong." *United States v. Pascucci*, 943 F.2d 1032, 1037 (9th Cir.1991) (quotation omitted). The Fourth Circuit has stated that whether a person holds a position of trust must be determined from the perspective of the victim. *United States v. Moore*, 29 F.3d 175, 180 (4th Cir.1994).

■ The position that Appellant enjoyed as a physician making claims for welfare funds is an example of the kind of position that the Official Commentary, *Moore*, and *Pascucci* describe. Contrary to Appellant's view, and as we have acknowledged *supra*, welfare fraud indisputably causes losses. The "victims" are the American taxpayers, who must pay the added costs that such fraud imposes. Moreover, as the House Ways and Means Committee has observed, welfare fraud is terribly difficult to detect because physicians exercise enormous discretion: their judgments with respect to necessary treatments ordinarily receive great deference and it is difficult to prove that those judgments were made for reasons other than the patients' best interests. *See* H.R. 95–393, 95th Cong., 1st Sess., pt. II, at 44 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3039, 3050.

We therefore hold that the district court properly enhanced Appellant's sentencing range for abusing a position of trust.

## IV. *Conclusion*

The decision of the district court is accordingly

*AFFIRMED.*