**UNITED STATES of America,**

v.

**Henry Miles SHERMAN, Appellant.**

**No. 97–5514.**

United States Court of Appeals, Third Circuit.

Argued July 9, 1998.

Decided Nov. 16, 1998.

---

Lawrence S. Lustberg (Argued), Mark A. Berman, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, New Jersey, for Appellant.

Faith S. Hochberg, United States Attorney, Elizabeth S. Ferguson (Argued), Assistant United States Attorney, Newark, New Jersey, for Appellee.

Before: SLOVITER and ROTH, Circuit Judges and FULLAM,[1] District Judge

## OPINION OF THE COURT

ROTH, Circuit Judge:

In this appeal, we are called on to further clarify the meaning of "a position of public or private trust," and "abuse" thereof in the context of a sentencing enhancement under § 3B1.3[2] of the United States Sentencing Guidelines. The defendant, Dr. Henry Sher-

---

1. Honorable John P. Fullam, United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

2. Section 3B1.3 of the Guidelines provides in part:

If a defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.

man, pled guilty to 5 counts of mail fraud for mailing bills to a health insurance company for medical services that were never rendered. The trial court at sentencing found that Dr. Sherman occupied and abused his position of trust vis-a-vis the defrauded insurance company and accordingly enhanced his offense level by two levels pursuant to § 3B1.3 of the Sentencing Guidelines. We will affirm the judgment of the trial court.

## I. Facts

Dr. Henry Sherman practiced medicine in East Orange, New Jersey. As part of an undercover investigation of Sherman for billing insurance companies for accident-related medical services that Sherman did not provide, investigators staged an accident and then sought treatment from Sherman for injuries that allegedly arose from that accident. Sherman proceeded to bill insurance companies for many times the actual number of office visits made by each patient and also for equipment he did not provide. Furthermore, Sherman had each patient sign an affidavit prior to receiving treatment in which the patient swore that he had read defendant's bill and certified that it was correct. In addition, Sherman created false progress notes and records of therapy visits; he kept these false records in each patient's file and submitted to insurance companies when requested.

Sherman was charged in a ten count indictment. Counts One through Nine charged him with mail fraud, in violation of 18 U.S.C. § 1341 and 2. Count Ten charged him with witness tampering, in violation of 18 U.S.C. § 1512(b) and 2. On November 30, 1995, Sherman pled guilty to five counts of mail fraud. The parties stipulated that the base offense level was 6, that the loss attributable was between $70,000 and $120,000 resulting in a six level increase, that the offense involved more than minimal planning and defrauded more than one victim, that Sherman obstructed justice, that he was an organizer or leader, and that he had accepted responsibility. In addition, following a sentencing hearing, the trial court awarded a two level enhancement to Sherman's base offense level pursuant to § 3B1.3, finding that he abused a position of trust. Sherman's final offense level was 17 and his criminal history category was I. The court sentenced him to 30 months' imprisonment on each of the five counts, to be served concurrently, and three years' supervised release. This was within the resulting Guidelines range of 24 to 34 months. In addition, Sherman was ordered to pay a fine of $50,000, restitution of $27,302.40, and a special assessment of $250. Sherman filed a timely notice of appeal.

The trial court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over Sherman's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review de novo the legal question of whether a position is one of trust under § 3B1.3 of the Guidelines, and we review for clear error whether a defendant abused that position. *United States v. Sokolow,* 91 F.3d 396, 411 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 960, 136 L.Ed.2d 846 (1997).

## II. Discussion

Sherman argues on appeal that the district court erred in granting a two level enhancement to his base offense level because he did not abuse a position of public or private trust as defined in § 3B1.3. The inquiry into whether a defendant was appropriately subject to a § 3B1.3 enhancement is two-fold. First, the court must determine "whether a defendant was placed in a position of trust." *United States v. Craddock,* 993 F.2d 338, 340 (3d Cir.1993), and second, if he was, "whether he abused that position in a way that significantly facilitated his crime." *Id.*

To determine whether a position of trust exists, we consider three factors:

(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority to which the position vests in defendant visa-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position.

*United States v. Pardo,* 25 F.3d 1187, 1192 (3d Cir.1994). We have explained that "[t]hese factors should be considered in light of the guiding rationale of the section—to punish 'insiders' who abuse their position rather than those who take advantage of an available opportunity." *Sokolow,* 91 F.3d at

413 (quoting *Pardo*, 25 F.3d at 1192). Additionally, Application Note 1 in the Commentary to § 3B1.3 explains that:

"Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.* substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily nondiscretionary in nature.

Consideration of the three judicial factors and of the application note, along with the guidance offered by the underlying rationale of § 3B1.3, all lead us to the same result—Sherman did in fact occupy a position of trust. First, his position allowed him to commit a wrong which was difficult to detect. Sherman was a licensed medical doctor. In this capacity, he was given discretion to make diagnoses and to determine the proper courses of treatment for his patients. His fraud was in the creation of false diagnoses and the prescription of false courses of treatment. As the district court found, "it is I think abundantly clear to me that Dr. Sherman and indeed any physician has professional discretion in terms of the treatment of his or her patients." Joint Appendix (JA) at A74. In addition, Sherman falsified his patients' progress notes and charts, which are the documents that the insurance company would most naturally request in order to detect a fraud. These falsifications made his fraud that much more difficult to detect. He covered his tracks with his own falsified records. It would be almost impossible for someone to verify the accuracy of those records without an independent examination of the patients themselves.

Sherman argues that his authority to act was narrowed by insurance company oversight, *i.e.*, regular audits of bills submitted to them. However, a careful review of the nature of the audits reveals that the audits were focused primarily on the application of the correct rate structure to a specific treatment, not on whether the treatment was necessary in the first place. In fact, it is quite difficult and, most likely, cost-prohibitive to run audits to assess whether diagnoses are proper. Additionally, if the patients are co-conspirators, this type of auditing would be fruitless.

In addition, the insurance company relied on the integrity of Sherman as a doctor holding a medical license. The insurance company could have had a second doctor shadow him and double check his diagnoses, but the expense would have been unreasonable. As the district court found, "the insurer to a great degree has no choice but to accept the judgments of the physician.... There is no meaningful alternative." JA at A75; *see United States v. Skodnek*, 933 F.Supp. 1108, 1119 (D.Mass.1996) ("Billing systems depend upon trust, and [the defendant] plainly took advantage of whatever honor system exists in the systems currently used for professional billing directed to insurance carriers for reimbursement.").

5 Alternatively, referring to the language in application note 1 to § 3B1.3 of the Guidelines, it is clear that the position Sherman held was "characterized by professional discretion." His judgments vis-a-vis diagnoses were given substantial deference. And he was in fact subject to far less supervision than employees of the insurance company whose work was non-discretionary. As the district court found, "I have never heard of anyone effectively supervising a physician because ... their education and training and analysis are what is inherent in the profession. Just by its very nature." JA at A74.

Once we have established that a position of trust existed, the second prong of the test—that defendant abused that position in a way that significantly facilitated his crime—is easily met. By virtue of the discretion given to Sherman in his position of trust, he was able to submit bills to the insurance company for services never provided. Furthermore, as the preparer of patient progress notes, he was able to create fraudulent progress notes to support the fraudulent bills.

■ Sherman argues that the mere fact that he happens to be a physician does not mandate an increase for the abuse of trust position. *See United States v. Gandy*, 36 F.3d 912, 916 n. 2 (10th Cir.1994) (§ 3B1.2 enhancement not warranted simply because defendant was a podiatrist). The mere possession of a professional license, medical or otherwise by a defrauder, does not mandate

a § 3B1.3 enhancement. But where a defendant obtains his minimally-supervised position by virtue of his professional training and license and then takes advantage of the discretion granted to him in a way which significantly facilitates the fraud, we can rightly say that he has abused a position of trust.

In *Gandy*, despite the fact that the defendant was a podiatrist, the Tenth Circuit remanded the case to determine whether the defendant had used his podiatric skill to facilitate the commission of the offense. 36 F.3d at 915. By contrast, the evidence here already demonstrates that Sherman used the discretion in diagnosing illnesses, granted to him by virtue of his being a medical license holder, to defraud his victim. *See United States v. Rutgard,* 116 F.3d 1270, 1293 (9th Cir.1997) (awarding a § 3B1.3 enhancement to an ophthalmologist convicted of Medicare mail fraud explaining that "the government as[Medicare] insurer depends upon the honesty of the doctor and is easily taken advantage of if the doctor is not honest"); *United States v. Adam,* 70 F.3d 776, 782 (4th Cir. 1995) (Section 3B1.3 enhancement was proper for physician convicted of receiving kickbacks paid out of welfare funds).

In short, the district court properly imposed the sentencing enhancement mandated by § 3B1.3. We will affirm its judgment.