**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 98-30707
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LOYD E. BELTON,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana
(97-CR-30023-ALL)

October 18, 1999

Before HIGGINBOTHAM, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Federal prisoner Loyd E. Belton was indicted in a six-count indictment with one count of making a false statement to the United States Postal Inspection Service, with respect to the issuance of a postal money order, in violation of 18 U.S.C. § 1001; three counts of embezzling or converting to his own use postal money orders within his control in violation of 18 U.S.C. § 1711; and two counts of making a false and fictitious entry with respect to the date of issuance of postal money orders, in violation of 18 U.S.C. § 2973. The jury convicted him on all counts. In addition to imposing sentences for the underlying offenses, the district court imposed a two-level enhancement each for more than minimal planning pursuant to U.S.S.G. § 2F1.1(b)(2)(A); for abuse of a position

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of public trust pursuant to U.S.S.G. § 3B1.3; and obstruction of justice pursuant to U.S.S.G. § § 3B1.3 and 3C.1.1.[1]

On appeal, Belton challenges the district court's imposition of a two-level sentencing enhancement each for an abuse of a position of trust and obstruction of justice.

## Standard of Review

The interpretation and application of sentencing guidelines are reviewed de novo, see United States v. Dahlstrom, 180 F.3d 677, 685 (5th Cir. 1999). Factual findings that predicate the application of the guidelines nonetheless shall not be disturbed absent clear error. United States v Marvaez, 38 F.3d 1652, 166 (5th Cir. 1994), cert. denied, 514 U.S. 1087, 115 S.Ct. 1803, 12 L.Ed.2d 729 (1995). As long as the finding is plausible in light of the record as a whole, it is not clearly erroneous. United States v. Sowels, 998 F.2d 249, 251 (5th Cir. 1993).

## Abuse of Discretion

Section 3B1.3 of the Sentencing Guidelines provides that "[i]f the defendant abused a position of public or private trust, . . . in a manner that significantly facilitated the commission or concealment of the offense, increase by two levels." Belton argues that he did not hold a position of trust or, alternatively, that his position did not aid in the commission or concealment of his offense. However, he waived the argument that he did not hold a position of trust as the Postmaster for Eros, Louisiana post office by conceding at sentencing that his position was one of trust. See United States v. Olano, 507 U.S. 725, 732-34, (1993). Therefore, the issue before us is whether the district court clearly erred when it found that Belton's position as postmaster significantly facilitated the commission or the concealment of the crime.

Application Note 1 of § 3B1.3 provides in part: "For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense." We have explained that "to determine whether the position of trust 'significantly

---

[1] The district court sentenced Belton to 13-month term of imprisonment to be followed by a 3-year term of supervised release.

facilitated' the commission of the offense, [a] court must decide whether the defendant occupied a superior position relative to all people in a position to commit the offense, as a result of [his] job." United States v. Powers, 168 F.3d 741, 752 (5th Cir. 1999)(quoting United States v. Fisher, 7 F.3d 69, 70-71 (5th Cir. 1993)). Belton contends that his position did not significantly facilitate the commission or the concealment of the offense because evidence at trial showed that other employees at the post office could have misappropriated money order funds in the same or similar manner. Because employees at the post office were under the same accounting rules and procedures, Belton argues that his position did not afford him any advantages that facilitated the commission or the concealment of the crime. See United States v. Iloani, 143 F.3d 921 (5th Cir. 1998) ("[t]he position of public trust 'must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons'"). Furthermore, he maintains that because the money order documentation was monitored at least once a month, the misappropriation was not a "difficult-to-detect" crime. See United States v. Sherman 160 F.3d 967, 969 (3rd Cir. 1998)(whether the defendant committed a difficult-to-detect wrong is a factor under the abuse of a position of trust enhancement provision); United States v. Williams, 966 F.2d 555, 557 (10th Cir. 1993)(same).

However, at the sentencing hearing the district court adopted the presentence report (the "PSR") which found that Belton's managerial duties and relative autonomy allowed him not only the opportunity to take money orders without paying for them but the opportunity to conceal the theft. See United States v. Fike, 82 F.3d 1316, 1326 (5th Cir. 1996)(district court may rely on information in the PSR if it has the required minimum indicia of reliability). Evidence adduced at trial supports the PSR's findings. The government demonstrated that Belton held a supervisory position as the postmaster of the Eros, Louisiana post office. Because of his supervisory position, his handling of the money orders was not subject to daily scrutiny at the Eros post office. Thus, Belton's criminal conduct was not easily or readily detectable.[2] Furthermore, Belton received special training in

---

[2] The lack of scrutiny at the Eros post office regarding Belton's handling of the money orders was

3

managing the financial affairs of the post-office which included procedures related to the issuance of money orders. Additionally, he provided window service and had unsupervised access to the money orders. Because of his supervisory position, he responded to the initial investigative inquiries regarding the discrepancies with the money orders; thus, his supervisory position afforded him an opportunity to conceal his crime by making false statements. As such, the trial court's adoption of the PSR which found that Belton used his position to facilitate the commission or the concealment of the offense was not clearly erroneous. Thus, the district court's two-level enhancement for abuse of a position of public or private trust is affirmed.[3]

### Obstruction of Justice

Belton also argues that the district court erred in imposing a two-level sentencing enhancement for obstruction of justice, pursuant to § 3C1.1. The district court's finding that Belton had submitted false documents during the course of an official investigation, thereby warranting the enhancement, is supported by the record. Therefore, Belton does not show that the district erred when it enhanced his sentence for obstruction of justice.

AFFIRMED.

---

evidenced by one of his co-employee's testimony. A relief postmaster at the Eros post office testified that at Belton's instructions, she included one of the fraudulently issued money orders in a "batch" of money orders she had issued. She stated that she did not question Belton when he made the request.

[3] In a similar fashion, the Eleventh Circuit in United States v. Milligan, 958 F.2d 345 (5th Cir. 1992), affirmed the district court's sentence enhancement for abuse of a position of trust where a postal window clerk used her position to misappropriate postal funds. Although Milligan is not binding on this court, our sister circuit's decision is instructive because it factually parallels the case at hand. In Milligan, the court found that the defendant had specialized knowledge and had unsupervised access to the computer system that monitored receipts for money orders. Furthermore, the court noted that the defendant was not subjected to daily audits, and thus, the misappropriation was not readily detectable. Similarly, Belton had special training in the handling and accounting procedures for the money orders and other financial matters relating to the post office. Also, he had unsupervised access to the money orders. Furthermore, he also was not subjected to daily audits. Finally, as a supervisor Belton's degree of autonomy was arguably greater than that of the window clerk in Milligan.