**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2694
_____

UNITED STATES OF AMERICA

v.

ASHOKKUMAR BABARIA,
                                         Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. No. 2-12-cr-00646-001)
District Judge:  Honorable Claire C. Cecchi
_____

Argued:  November 18, 2014
_____

Before: SMITH, HARDIMAN and BARRY, Circuit Judges

(Opinion Filed:  December 31, 2014)
_____

Joseph D. Mancano, Esq. (Argued)
Cedrone & Mancano
123 South Broad Street
Suite 810
Philadelphia, PA 19109

*Counsel for Appellant*

Mark E. Coyne, Esq.
Office of United States Attorney
970 Broad Street
Room 700

Newark, NJ 07102

Glenn J. Moramarco, Esq. (Argued)
Office of United States Attorney
Camden Federal Building & Courthouse
401 Market Street
Camden, NJ 08101

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

BARRY, Circuit Judge

In this appeal, we are asked to consider whether the medical director and manager of a Medicare and Medicaid provider who supervised the payment of kickbacks occupied a position of trust for purposes of U.S. Sentencing Guidelines Manual § 3B1.3 (2013), which provides for a two-level upward adjustment in offense level for abuse of a position of trust. We hold that on the facts of this case, the District Court properly applied the adjustment, and that neither of the two remaining issues raised by Appellant has merit. We, therefore, will affirm the judgment of sentence.

I.

Dr. Ashokkumar R. Babaria was a licensed radiologist and the medical director and manager of Orange Community MRI, LLC ("Orange"), an authorized Medicare and Medicaid provider[1] offering diagnostic testing, including Magnetic

---

[1] The record is unclear as to whether Orange is properly categorized as a "supplier" or a "provider" in the context of Medicare and Medicaid. The distinction, however, is not relevant for purposes of this appeal and we refer, as did the parties and the District Court, to Orange as a "provider" under both government programs.

Resonance Imaging (MRI), Computed Tomography (CT) scans, and ultrasounds. In 2012, Dr. Babaria pleaded guilty to one count of making illegal payments—kickbacks—in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) (the "anti-kickback statute"). He acknowledged that, from 2008 through 2011, he paid physicians to refer their patients to Orange for diagnostic testing, and that he billed Medicare and Medicaid for diagnostic testing that was tainted by these corrupt referrals. As a result, Orange received $2,014,600.85 in payments from Medicare and Medicaid that were directly traceable to the kickback scheme. There is no evidence, however, that Dr. Babaria falsified patient records, billed Medicare or Medicaid for testing that was not medically necessary, or otherwise compromised patient care.

At sentencing, Dr. Babaria objected to the Pre-Sentence Investigation Report ("PSR"), which recommended that he receive a two-level adjustment for abuse of a position of trust pursuant to § 3B1.3, and a four-level adjustment for aggravating role pursuant to § 3B1.1(a), resulting in a recommended Guidelines range of 70-87 months' imprisonment. Ultimately, the Guidelines range as calculated in the PSR was 60 months, capped as it was by the statutory maximum for Dr. Babaria's count of conviction. He argued, however, that the sentencing adjustments were unwarranted and that the correct range was 37 to 46 months. Following oral argument on these and other issues, at sentencing the District Court applied both adjustments but granted a downward variance and sentenced Dr. Babaria to 46 months' imprisonment, a fine of $25,000, and a three-year term of supervised release. The Court also ordered him to forfeit the $2,014,600.85 he conceded had been paid by Medicare and Medicaid.

II.

Dr. Babaria argues that the District Court erred in applying the two-level adjustment under § 3B1.3 because he neither occupied nor abused a position of public or private trust. That Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We "review de novo the legal

question of whether a position is one of trust under § 3B1.3 of the Guidelines, and we review for clear error whether a defendant abused that position." *United States v. Sherman*, 160 F.3d 967, 969 (3d Cir. 1998). While the standard by which a court must analyze whether a defendant's conduct fits within the § 3B1.3 adjustment is well settled in our Court, whether the adjustment was properly applied under the factual circumstances of this case presents an issue of first impression.

Section 3B1.3 provides for a two-level upward adjustment in offense level where a defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." Application note one defines "public or private trust" as follows:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult).

U.S. Sentencing Guidelines Manual § 3B1.3 cmt. n.1 (2013). We have held that "[t]he inquiry into whether a defendant was appropriately subject to a § 3B1.3 enhancement is two-fold." *Sherman*, 160 F.3d at 969. First, the court "must determine whether a defendant was placed in a position of trust," and, if he was, it must then determine "whether he abused that position in a way that significantly facilitated his

4

crime."  *Id.* (quoting *United States v. Craddock*, 993 F.2d 338, 340 (3d Cir. 1993)) (internal quotation marks omitted).

In determining whether a position of trust exists, we consider three factors:  "(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority to which the position vests in defendant vis-à-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position."  *Id.* (quoting *United States v. Pardo*, 25 F.3d 1187, 1192 (3d Cir. 1994)).  These factors should be considered "in light of the guiding rationale of the section – to punish 'insiders' who abuse their positions rather than those who take advantage of an available opportunity."  *Pardo*, 25 F.3d at 1192.

While our Court has not yet addressed application of this adjustment in the context of a Medicare or Medicaid kickback scheme, the Fourth and Eleventh Circuits, in *United States v. Adam*, 70 F.3d 776 (4th Cir. 1995), and *United States v. Liss*, 265 F.3d 1220 (11th Cir. 2001), have done so, and have upheld application of the adjustment.  *But see United States v. Anderson*, 85 F. Supp. 2d 1084 (D. Kan. 1999) (rejecting application of the adjustment).  In *Adam*, the Fourth Circuit held that the adjustment was properly applied to a physician who received kickbacks in exchange for referrals.  70 F.3d at 778, 782.  Citing a House Ways and Means Committee Report, the court observed that Medicare and Medicaid fraud "is terribly difficult to detect because physicians exercise enormous discretion:  their judgments with respect to necessary treatments ordinarily receive great deference and it is difficult to prove that those judgments were made for reasons other than the patients' best interests."  *Id.* at 782.  Accordingly, the court concluded that "[t]he position that Appellant enjoyed as a physician making claims for welfare funds" fit within § 3B1.3's definition of a "position of trust."  *Id.*

Citing *Adam* and "adopt[ing] its analysis and holding," the Eleventh Circuit in *Liss* likewise upheld application of the adjustment where a physician had received illegal kickbacks in return for patient referrals.  265 F.3d at 1229-30.  The court

5

held that the physician occupied a position of trust, vis-à-vis Medicare, and abused that position of trust by receiving kickbacks, even where "the referrals were medically necessary," and, as here, the physician "[did] not falsify patient records or submit fraudulent claims." *Id.* at 1229.

We hold that Dr. Babaria occupied a position of trust vis-à-vis Medicare and Medicaid as the medical director and manager of Orange, an authorized provider. On behalf of Orange, he certified compliance with the anti-kickback statute[2], but nevertheless utilized his position as Orange's medical director and manager to supervise and conceal the payment of kickbacks, a difficult-to-detect offense. Our decision is consistent not only with *Adam* and *Liss*, but also with our precedent in *United States v. Nathan*, 188 F.3d 190 (3d Cir. 1999), in which we held that the §3B1.3 adjustment was properly applied to the president of a defense contracting company who made false certifications to the government and utilized his position as company president to supervise and conceal fraudulent activity. In *Nathan*, we held that the defendant occupied a position of trust because, "as president of the company, [he] was in a unique position to make decisions for the company and to decide how [it] would fill the government contracts," and, because there was no one supervising his acts, "he held a position that allowed him to commit wrongs, and that permitted him to make those wrongs harder to detect" by directing subordinates to cover up the offense. *Id.* at 207. So too here, there was no one supervising Dr. Babaria's position as the medical director and manager of Orange and no dispute that, in those positions, he was in a unique position to decide to pay illegal referral fees, payments he made and concealed over a period of several years.

In summary, unlike a lower-level employee of a Medicare or Medicaid provider, Dr. Babaria was the

---

[2] The record contains examples of Dr. Babaria's certifications to Medicare, but not Medicaid. At sentencing, however, Dr. Babaria did not take issue with the District Court's finding that he had made certifications to both Medicare and Medicaid.

6

authorizing official who certified Orange's compliance with the anti-kickback statute, and was not subject to any supervision over his actions with respect to the business and its relationship with the government programs. He was, without question, an "insider[]" who "abuse[d] [his] position[]," not merely an individual who took advantage of an available opportunity. *See Pardo*, 25 F.3d at 1192. Indeed, Dr. Babaria's position contributed in a "significant way to facilitating the commission or concealment of the offense," *see* § 3B1.3 cmt. n.1, because his level of authority and the lack of supervision over his actions enabled him to commit the offense and evade detection.

One final note on the § 3B1.3 adjustment. At all times over the several years during which this offense was committed, Dr. Babaria was a licensed radiologist in addition to serving as medical director and manager of Orange. We have acknowledged that the mere possession of a medical license "does not mandate a § 3B1.3 enhancement." *See Sherman*, 160 F.3d at 970-71. We have held, however, that "where a defendant obtains his minimally-supervised position by virtue of his professional training and license and then takes advantage of the discretion granted to him in a way which significantly facilitates the fraud, we can rightly say that he has abused a position of trust." *Id.* at 971. While Dr. Babaria need not have been a licensed radiologist in order for Orange to have become an authorized Medicare and Medicaid provider, or in order for him to hold the position of medical director and manager, we cannot ignore the likelihood that his professional training and license contributed in a significant way to his ability to obtain his position and to supervise Orange's activities vis-à-vis Medicare and Medicaid. In certifying to Medicare, *e.g.*, that Orange agreed to comply with the anti-kickback statute, Dr. Babaria specifically indicated his status as a medical doctor. (*See* Supp. App. at 30-31.) For these reasons, it was not erroneous for the District Court to consider that status when applying the adjustment.

We are mindful of the fact that, as we have observed, "a court should hesitate before defining the concept [of a position of trust] too broadly, as there is a component of

7

misplaced trust inherent in the concept of fraud." *See United States v. Iannone*, 184 F.3d 214, 222 (3d Cir. 1999) (internal quotation marks and citation omitted). That having been said, however, we have no difficulty in affirming the well reasoned decision of the District Court applying the adjustment on the facts of this case.

### III.

Dr. Babaria also argues that the District Court erred in applying a four-level upward adjustment in offense level for aggravating role, and by failing to give meaningful consideration, as it was required to do under 18 U.S.C. § 3553(a), to certain of his sentencing arguments. We have carefully reviewed these arguments and find them to be without merit.[3] The Court did not err in concluding that Dr. Babaria acted as an organizer or leader in connection with the offense, in light of his admitted conduct in supervising the payment of referral fees to numerous physicians, as well as the Court's own familiarity with the criminal culpability of the many related participants in the scheme who had already pled guilty before it. We likewise conclude, having thoroughly reviewed the 128-page transcript of Dr. Babaria's sentencing, that "the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc).

### IV.

We will affirm the judgment of sentence.

---

[3] We review the District Court's determination with respect to the aggravating role adjustment for clear error, *see United States v. Hart*, 273 F.3d 363, 378 (3d Cir. 2001), and we review for abuse of discretion whether the Court gave "meaningful consideration" to Dr. Babaria's sentencing arguments. *See United States v. Flores-Mejia*, 759 F.3d 253, 258 n.7, 259 (3d Cir. 2014) (en banc).