NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3028
_____

UNITED STATES OF AMERICA

v.

PAMELA A. MILLS,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 5-10-cr-00725-001)
District Judge:  Honorable Lawrence F. Stengel
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 9, 2016
_____

Before:  JORDAN, VANASKIE, and KRAUSE, *Circuit Judges*

(Filed:  September 6, 2017)
_____

OPINION*
_____

VANASKIE, *Circuit Judge.*

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

In this *Anders* case,[1] Pamela A. Mills filed a § 2255 motion collaterally attacking her sentence for embezzlement. The Court issued a Certificate of Appealability and appointed Attorney Patrick J. Connors to represent Mills in her appeal. Connors has now filed an *Anders* motion requesting to withdraw in the belief that there are no nonfrivolous issues for the Court to adjudicate. Mills opposes the motion. At this juncture, there are two main issues: (1) whether Mills' appeal is timely, and (2) whether it has merit. We find in Mills' favor on the first question, but against her on the second—she possesses no viable path to relief. We will grant the *Anders* motion, permit Connors to withdraw, and affirm.

## I.

Appellant Pamela A. Mills is a former bookkeeper for Maxwell Resources, Inc., which does business as Synergy Software. Synergy is owned and operated by Barbara and Howard Maxwell. In December 2011, Mills pleaded guilty to 23 counts relating to embezzlement, wire fraud and tax fraud in conjunction with her role at Synergy, in violation of 18 U.S.C. §§ 1341, 1343 and 26 U.S.C. § 7206(1). In the plea agreement, Mills waived her right to directly appeal or collaterally attack her conviction (with exceptions not relevant here), and stipulated that she had caused a loss of $1,423,780.73 to her victims.

---

[1] As detailed below, *Anders v. California* requires the Court to follow specific procedures before permitting a court-appointed attorney to withdraw from representing a criminal defendant on appeal. 386 U.S. 738, 741-42, 744 (1967).

Prior to sentencing, the Probation Office prepared a presentence investigation report following interviews with many of the individuals involved in the case. The report noted that Mills disputed several aspects of the facts and narrative detailed in the report. But at Mills' sentencing hearing, she raised no objection to the report, and the District Court adopted it. Based upon the information in the report, the District Court imposed two sentencing enhancements, one for abuse of a position of trust, and one for causing a loss of over $1,000,000. Mills objected to neither of these enhancements. In the end, she received a sentence including 78 months in custody and a restitution award of $1,643.065.17. Mills directly appealed, and we dismissed that appeal pursuant to the appellate-waiver provisions of the plea agreement.

In late 2013, Mills moved the District Court under 28 U.S.C. § 2255 to vacate or amend her sentence, alleging claims of ineffective assistance of counsel. The United States filed a response that disputed Mills' claims but also affirmatively declined to seek to enforce the plea agreement's collateral-waiver provisions, because unlike the direct-appeal provisions in the plea agreement, the collateral-appeal provisions had not been raised in Mills' plea colloquy. Nevertheless, the District Court enforced the collateral waiver and in an April 3, 2014 order denied Mills' § 2255 motion on those grounds.

On May 9, 2014, Mills made two filings in the District Court: (1) she requested that the District Court grant her a certificate of appealability, and (2) she moved the District Court to reconsider its April 3 order denying her § 2255 motion. In those filing papers, Mills—who is in federal prison in Texas—stated she did not receive notice of the District Court's April 3 order until April 22. On May 22, the District Court denied Mills'

3

request for a certificate of appealability. On June 10—while the motion to reconsider remained pending—Mills filed a notice of appeal, listing the District Court's May 22 certificate-of-appealability denial as the order from which she was appealing.

We construed Mills' filings to constitute a request for a certificate of appealability from this Court, which we granted after finding that Mills had made a substantial showing that the District Court erred in *sua sponte* applying the collateral appeal waiver in spite of the United States' decision to not raise the issue. We ordered that four issues be litigated on appeal: (1) "whether the District Court properly enforced the collateral appeal waiver in view of the Government's express decision not to seek enforcement of this aspect of the plea agreement"; (2) "whether defense counsel was ineffective for not challenging at sentencing the abuse of position of trust enhancement"; (3) "whether defense counsel was ineffective for not challenging the fraud loss calculation"; and (4) whether the Court "can or should proceed with this appeal while" the motion for reconsideration was still pending. (Order, Sept. 9, 2015.)

The Clerk appointed Attorney Patrick J. Connors to represent Mills in her appeal. Connors reviewed the case, and in January 2016 filed a motion requesting that he be permitted to withdraw. He filed a brief supporting his motion, arguing there were no nonfrivolous issues for the Court to adjudicate. The United States filed a brief in support, and Mills filed a *pro se* brief in opposition.

When Connors filed his motion, Mills' motion to reconsider was still pending in the District Court. The District Court denied that motion on March 22, 2016.

4

**II.**

Our evaluation of a court-appointed appellate attorney's request to withdraw is governed by the rules laid out in *Anders v. California*, 386 U.S. 738 (1967). It is ethically permissible if not required for a court-appointed attorney to withdraw if counsel believes his client's appeal is "wholly frivolous," but the Court may grant such a request only after following a specific set of procedures designed to protect the client's rights. *Anders*, 386 U.S. at 741-42, 744.[2]

These procedures involve three steps: First, the attorney requesting to withdraw must file a "brief referring to anything in the record that might arguably support the appeal," *id.* at 744; the United States must file a responsive brief, 3d Cir. L.A.R. 109.2(a); and the appellant may choose to file her own *pro se* brief, *id.* Second, the Court must examine the court-appointed attorney's brief to see that counsel has "thoroughly examined the record in search of appealable issues," *United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001); identified any "issue[s] arguably supporting the appeal," *Smith v. Robbins*, 528 U.S. 259, 282, 285 (2000); and "explain[ed]" why any argument in support of any identified issue would be "frivolous," *United States v. Marvin*, 211 F.3d 778, 780-81 (3d Cir. 2000). Third, the Court must perform an "independent review of the

---

[2] *Anders* procedures are not required but are appropriate when a court-appointed attorney requests to withdraw from a § 2255 appeal, because unlike in a direct criminal appeal, the Constitution does not guarantee a § 2255 movant a right to counsel. *Simon v. Gov't of the Virgin Islands*, 679 F.3d 109, 115 (3d Cir. 2012); *see also Anders*, 386 U.S. at 741-42 (stating that the *Anders* procedures help protect the Sixth Amendment right to counsel and the Fourteenth Amendment rights to due process and equal protection).

record" to determine on its own whether nonfrivolous issues exist. *Id* at 780. The Court may use the briefs as a guide through the record and need not perform a "complete scouring of the record." *Youla.* 241 F.3d at 301.

If after these three steps, the Court finds itself aware of no nonfrivolous issues for adjudication, it will grant the *Anders* motion, permit the attorney to withdraw, and dispose of the case. 3d Cir. L.A.R. 109.2(a). However, if even one nonfrivolous issue exists, the Court will deny the *Anders* motion.

Here, Connors and the United States each filed briefs in which they faithfully completed their duties. The Court has independently reviewed the record. The parties agree that Mills possesses nonfrivolous arguments on two of the issues in the Certificate of Appealability—that the District Court erred in enforcing the collateral-waiver provisions in the plea agreement, and that the motion-to-reconsider issue is now moot due the District Court's denial of that motion. But there is a dispute as to (1) whether Mills' appeal is timely, and (2) whether Mills has nonfrivolous arguments on the second and third issues in the Certificate of Appealability, pertaining to the merits of her ineffective-assistance-of counsel claims.

## A.

The first question is whether Mills has a nonfrivolous argument that her appeal is timely. The timely filing of a notice of appeal is a "jurisdictional requirement." *Bowles*

*v. Russell*, 551 U.S. 205, 214 (2007).[3]  A notice of appeal is timely if it is filed within 60 days of the entry of either final judgment or an appealable order.  Fed. R. App. P. 4(a)(1)(B).[4]

These timing rules are flexible enough to accommodate the context of the *pro se* prisoner.  A *pro se* litigant's filings must be construed "liberally."  *Pearson v. Sec'y Dep't of Corrs.*, 775 F.3d 598, 604 (3d Cir. 2015).  The timeliness of a prisoner's notice of appeal is calculated from the date the prisoner actually receives notice of a judgment or appealable order following any delay in delivery by prison officials, not the date the judgment or order is entered, and it is the government's burden to prove date of receipt. *Long v. Atlantic City Police Dep't*, 670 F.3d 436, 443-44 (3d Cir. 2012).  And substance must prevail over form in determining whether a particular document filed by a *pro se* appellant should be considered as a "notice of appeal"—we "deem" any document that "evidences" a *pro se* appellant's "intention to appeal" as a notice of appeal, even if the appellant has labeled it something else.  *Rountree v. Balicki*, 640 F.3d 530, 536 (3d Cir. 2011) (quoting 3d Cir. L.A.R. 3.4 (2010)) (deeming a request for a certificate of appealability to also constitute the appellant's notice of appeal).

---

[3] The District Court had jurisdiction under 28 U.S.C. § 2255 and 18 U.S.C. § 3231, and 28 U.S.C. § 1291 grants us general appellate jurisdiction over Mills' case.

[4] Rule 4(a) governs the timing requirements for Mills' case, even though Rule 4(a) by its terms addresses civil cases and Mills' § 2255 motion was filed in her criminal case, because Rule 11(b) of the Rules Governing Section 2255 Proceedings provides that we look to Rule 4(a) in these circumstances.

7

Here, the United States argues Mills failed to timely appeal the April 3, 2014 denial of her § 2255 motion, for two reasons: (1) Mills filed her June 10 notice of appeal more than 60 days after April 3, and (2) even if the June 10 notice was timely, it cited the wrong order—the May 22 order denying Mills' request for a certificate of appealability, not the April 3 order denying the § 2255 motion. Both of these arguments miss the mark. First, the June 10 notice relates to the April 3 order even though its text explicitly references only the May 22 order because Mills' *pro se* status counsels us to liberally construe the document, given her obvious intent to appeal the merits of her claim. *See Balicki*, 640 F.3d at 536. Second, if the prison was responsible for the delay, the 60-day clock must run from April 22, when Mills received the District Court's order through the prison mail, not April 3, when the order was issued. *Long*, 670 F.3d at 443-44. In that case, because June 10 came less than 60 days after April 22, Mills' notice would be timely.

Although the United States does not contradict Mills' statement that delivery was delayed and offers no documents to suggest that delivery occurred any earlier, we have emphasized that "some kind of fact-finding is essential" in this circumstance, *id*. at 444 n.16, and ordinarily would remand to the District Court to conduct jurisdictional discovery. No such remand is required here, however, because we may deem Mills' May 9 filing to be her notice of appeal, and that filing would undeniably be timely. Although the May 9 filing was labeled as a request for a certificate of appealability, not a notice of appeal, we may deem it to be a notice of appeal because Mills is pro se and the document

8

makes plain Mills' intent to specifically appeal the April 3 order. *Balicki*, 640 F.3d at 536. Thus, Mills filed a timely notice of appeal, and we have jurisdiction.

**B.**

The second question is whether Mills has nonfrivolous arguments on the two ineffective-assistance-of-counsel merits issues raised in the Certificate of Appealability. To receive relief for ineffective assistance of counsel, Mills must show "(1) that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007).

Here, Mills lacks nonfrivolous arguments on the two ineffectiveness issues raised in the Certificate, the first of which was whether Mills' trial attorney should have objected to the District Court's application of a two-level abuse-of-position-of-trust sentencing enhancement. That enhancement applies when a defendant is found to have "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S. Sentencing Guidelines Manual § 3B1.3 (U.S. Sentencing Comm'n 2011). Three factors determine whether a defendant held a position of trust: "(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority to which the position vests in defendant vis-à-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position. *United States v. Babaria*, 775 F.3d 593, 596 (3d Cir. 2014) (quoting *United States v. Sherman*, 160 F.3d 967, 969 (3d Cir. 1998)). The point is to "punish 'insiders' who abuse their positions

9

rather than those who take advantage of an available opportunity." *Id.* (quoting *United States v. Pardo*, 25 F.3d 1187, 1192 (3d Cir. 1994)). The role of bookkeeper may constitute a position of trust if the individual holds a sufficient degree of "autonomy," *United States v. Deal*, 147 F.3d 562, 564 (7th Cir. 1998), or "managerial discretion," *United States v. O'Connell*, 252 F.3d 524, 529 (1st Cir. 2001).

Here, Mills' role as bookkeeper was a position of trust because her autonomy was near total. By 2000 she was the Maxwells' lone Synergy employee tasked with bookkeeping, and was subject to almost no supervision. She had authority to write company checks (for legitimate business purposes), and had responsibility for certain financial records. For eight years, no one double-checked her work, and oversight only began when she became suspected of fraud.[5] That she had autonomy is demonstrated by the facts of her scheme: even though her fraud was far from sophisticated—she simply wrote company checks to herself and spent on the Maxwells' credit cards—it still went on for eight years. Those eight years of autonomy presented her with much more than "*an* opportunity"—it made her an insider.

Mills then abused that position through years of repeatedly writing company checks to herself and drawing on company credit cards and other business accounts. Mills has suggested her trial attorney could have argued that these actions did not constitute an abuse of her position because—in her view of the facts—Howard Maxwell

---

[5] These facts are contained in the presentence report. The report contains no dispute specific to the facts of Mills' role or autonomy, and as mentioned above, Mills did not object to the District Court's adoption of the report.

blessed her taking of the company's funds. But even if that were true—and Mr. Maxwell disputed that argument in interviews with the Government—Mills' argument runs up against her guilty plea: by pleading guilty to 23 counts of embezzlement-related conduct and tax fraud, occurring from 2000 to 2008, she admitted to doing those acts when she was Synergy's bookkeeper. Her view of what Mr. Maxwell did or did not condone is immaterial now that she has admitted to the fact of her guilt. The fact of her embezzlement is the abuse necessary for an abuse-of-position-of-trust enhancement, and she has no nonfrivolous argument to the contrary.

The second ineffectiveness issue in the Certificate was whether Mills' trial attorney should have objected to the District Court's loss calculation. Perhaps, for example, Mills' trial attorney could have argued that Mills should not have been charged for causing $1,423,780.73 in losses, but rather only $688,469.23, because the latter amount is what the IRS found that Mills failed to report. But that argument cannot possibly succeed: (1) Mills stipulated to the higher amount in her plea agreement and there is no reason to suspect she can avoid the stipulation's binding nature; and (2) even if Mills could escape the stipulation, this argument would be off point because the IRS amount relates only to Mills' tax fraud from 2006 to 2008, when the amount she seeks to contest relates to the fraud loss spanning from the broader period of time of 2000 to 2008.

Finally, in her *pro se* brief in opposition to Connors's motion, Mills raises ineffectiveness issues not listed in the Certificate of Appealability. She claims her trial attorney failed to litigate promised issues, should have fought for a delayed surrender date, and improperly allowed his advocacy to become colored by a personal opinion that

11

Mills deserved her sentence. (Mills' Br. at 1-2.) Even if these allegations are true, they do not give rise to nonfrivolous arguments of ineffective assistance of counsel, because to receive relief Mills must prove that her attorney's actions altered the outcome of her case. *Albrecht*, 485 F.3d at 127 (requiring a showing of "prejudice[]"). Her allegations are concerning, but on their own they do not suggest that had the alleged events not occurred, Mills would have received a less severe sentence.

### III.

Mills possesses nonfrivolous arguments on the issues relating to the collateral waiver and the motion to reconsider, and her appeal is timely, but she lacks a nonfrivolous argument on the two ineffective-assistance-of-counsel merits issues. Mills therefore has no viable path to relief. We will grant the *Anders* motion, Connors may withdraw from his representation of Mills, and we will affirm.[6]

---

[6] We also note that Mills' case does not appear to present any issues for which the Supreme Court might grant review, and Connors is therefore under no obligation to aid Mills in filing a petition for a writ of certiorari. 3d Cir. L.A.R. 109.2(b).

12