NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1927
_____

UNITED STATES OF AMERICA

v.

ABBE EDELMAN,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 2-14-cr-00706-001)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 3, 2016

Before:  JORDAN, GREENBERG, and SCIRICA, *Circuit Judges*.

(Filed: March 4, 2016)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

        Abbe Edelman appeals his sentence from the United States District Court

for the District of New Jersey.  Specifically, he challenges the application of a

_____

        * This disposition is not an opinion of the full court and, pursuant to I.O.P.
5.7, does not constitute binding precedent.

two-level enhancement in the calculation of the sentencing Guidelines, based on his abuse of a position of public or private trust. We will affirm.

## I.    Background

From as early as 2004 through his arrest in May 2014, Edelman engaged in a fraudulent real estate investment scheme. He presented himself to his victims as a successful real estate investor operating through several entities (the "Edelman Real Estate Companies" or "ERECs"),[1] and he claimed substantial experience buying and selling real estate, a history of working with banks to profitably flip foreclosed properties, and an MBA in real estate finance from New York University. None of those claims were true. He also touted, truthfully, his long tenure as a real estate appraiser, the license for which he had held since 1988.

In soliciting investments from his victims, Edelman employed a variety of misrepresentations. He told victims that their investments would be used to purchase foreclosed properties in New York, New Jersey, California, and Florida at deep discounts from banks, whereupon the properties would be either leased out or sold, generating substantial profits for the investors. He also falsely claimed that he had already made millions through similar transactions, was investing his own money in the alleged transactions, and had a host of other investors participating (including professional athletes and celebrities). Little to none of the money he obtained was, in fact, used to purchase real estate. Instead, Edelman ran

---

[1] These entities included Classic Real Estate Appraisers, d/b/a Regency Property Appraisers, Embassy Real Estate Fund, LLC, Regency Equity Partners LLC, and Regency Equity Partners LLP.

a classic Ponzi scheme, making "lulling" payments to existing investors to allow his fraud to continue undetected. (App. at 14.) He also sent emails that purported to be from banks selling investment properties, to falsely assure his victims that their investment was proceeding as planned and to limit any suspicion. In total, Edelman fraudulently secured over $5 million from investors, much of which he used to pay his extravagant personal expenses. His scheme was ultimately discovered and he was arrested on May 13, 2014.

Edelman reached a plea agreement with the government, pursuant to which he pled guilty to a single count of wire fraud in violation of 18 U.S.C. § 1343, and agreed to a forfeiture of over three million dollars. He and the government further agreed that the appropriate offense level under the U.S. Sentencing Guidelines for his crime was 26. That calculation included a three-level reduction for acceptance of personal responsibility under U.S.S.G. §§ 3E1.1(a) and (b), conditioned on his ongoing acceptance of responsibility and cooperation with authorities. As part of the plea agreement, Edelman reserved his right to appeal any sentence above the Guidelines range associated with an offense level of 26.[2] At that level, and based on Edelman's criminal history category of I, the applicable range was 63 to 78 months. U.S.S.G. Ch. 5 Pt. A.

---

[2] As the plea agreement pointed out, the agreed-upon offense level operated only as a recommendation to the sentencing judge, who was free to "make independent factual findings and … reject any or all of the stipulations entered into by the parties." (App. at 21).

The U.S. Probation office took issue with that Guidelines calculation in its Presentence Investigation Report. It argued instead that Edelman should not receive any reduction for acceptance of responsibility and should be subject to a two-level enhancement for abuse of a position of public or private trust under U.S.S.G § 3B1.3, yielding a final offense level of 31 and associated imprisonment range of 108 to 135 months. U.S.S.G. Ch. 5 Pt. A. The acceptance-of-responsibility reduction, it argued, was inappropriate in light of Edelman's failure to honestly and forthrightly disclose the disposition of the proceeds of his fraud and to provide a complete and accurate financial affidavit. As to the enhancement for abuse of a position of trust, the Probation Office relied primarily on Edelman's license as a real estate appraiser and his advertising based on that license, concluding that Edelment "exploited his license" to "[give] his victims a false sense of confidence and trust, thereby facilitating his ability to run the Ponzi scheme." (PSR ¶ 45.)

At the sentencing hearing, after Edelman and a number of his victims made statements, the District Court concurred with the Probation Office's recommendation. The Court concluded that Edelman had, indeed, failed to sufficiently take personal responsibility for his actions and so did not merit a reduction under §§ 3E1.1(a) and (b). It similarly adopted the Probation Office's recommendation as to Edelman's abuse of a position of trust. In so doing, the judge stated:

4

Probation then assessed another set of points as it related to abuse of trust. And I did find that that was absolutely applicable. I know that there's an argument that abuse of trust is the same thing as sophisticated means, and I don't think that that's the case. Abuse of trust is just as the victims stated here. It was this luring that you involved yourself in, that you basically ingratiated yourself with these individuals. You learned things about their families. You did personal things with them. You shared personal things with them. And one victim wrote that you even brought your child to meet them and basically in part of – in the process of luring them in to believe your absolute web of lies. And because of that, they developed a relationship with you. They developed a belief that you were an honest person. They believed that you were exactly who you said you were. That you had these years of experience. And not only had those years of experience, but you had the degrees to go with it. And all of this information you basically used to lure them in. To basically con them into believing that you were this sincere individual, which by any stretch of the imagination, you are clearly not … .

So I think that you absolutely violated their trust.

(App. 152-53.)

Based on those findings, the District Court concluded that the proper offense level for Edelman was 31 and sentenced him to 135 months' incarceration, the top of his Guidelines range.

This timely appeal followed.

## II.    Discussion[3]

Edelman challenges the District Court's application of the abuse-of-a-position-of-trust enhancement under U.S.S.G. § 3B1.3 in calculating his

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction pursuant to 18 U.S.C. § 3742(a).

5

Guidelines range.[4] The inquiry into whether that section should be applied is two-fold. "First, the court must determine whether a defendant was placed in a position of trust, and, if he was, it must then determine whether he abused that position in a way that significantly facilitated his crime." *United States v. Babaria*, 775 F.3d 593, 596 (3d Cir. 2014) (internal quotation marks omitted). "We review de novo the legal question of whether a position is one of trust under § 3B1.3 of the Guidelines, and we review for clear error whether a defendant abused that position." *Id.* at 595 (internal quotation marks omitted).

Section 3B1.3 imposes a two-level enhancement when "the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense … ." It defines a position of "public or private trust" as one "characterized by professional or managerial discretion," a role "subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." U.S.S.G. § 3B1.3 cmt. 1. "This adjustment also applies in a case in which the defendant provides sufficient indicia to the victim that the defendant legitimately holds a position of private or public trust when, in fact, the defendant does not." U.S.S.G. § 3B1.3 cmt. 3. As laid out in *United States v. Pardo*, there are three factors to consider in determining whether a position is one of public or private

---

[4] While the District Court's deviation from the agreed-upon offense level of 26 includes not only the addition of the two-level enhancement under § 3B1.3 but also a refusal to apply the acceptance of responsibility three-level reduction, Edelman challenges only the former.

trust for purposes of § 3B1.3: "(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority which the position vests in defendant vis-à-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position."  25 F.3d 1187, 1192 (3d Cir. 1994).

We explored how those factors would apply to the perpetrator of an investment fraud scheme in *United States v. Iannone*, 184 F.3d 214 (3d Cir. 1999). In that case, Iannone, relying on his experience in the oil and natural gas industry, established his own company that purported to do business in that field.  *Id.* at 217. He solicited investments from neighbors, ostensibly for opening wells on two leaseholds that he had, in fact, secured.  *Id.*  However, rather than use any of the "investments" for the asserted purposes, he simply used the money "for personal expenses."  *Id.* at 218.  As part of the ongoing fraud, Iannone held himself out as a Vietnam veteran to gain the trust of his victims, and continuously lied to his "investors" whenever they became concerned or suspicious.  *Id*.

Iannone pleaded guilty and received a sentence that included the § 3B1.3 enhancement.  *Id.* at 219.  On appeal, we affirmed the application of that enhancement, based on Iannone's position as the CEO of the company he created and used to execute the fraud.  *Id.* at 223-25.  Specifically, we reasoned that, operating as the head of his company, he "solicited investment monies for the express purpose of financing" the sham venture, and that he "occupied a 'managerial' position, in which he expectedly was entrusted with the task of using

7

the investors' money to complete [the project the victims thought they were investing in]." *Id.* at 224-25.

We then applied the *Pardo* factors. First, we concluded that Iannone's position facilitated the commission of a difficult-to-detect wrong because "[h]is managerial position allowed him to conceal his personal use of the victims' investment money" and because, as the owner and sole proprietor of the company, "he was the victims' only source of information about the status of their investment and was not subject to any supervision that would have uncovered his fraud." *Id.* at 225. In finding the second factor – the degree of authority – satisfied, we concluded that Iannone's sole-proprietor status conferred complete control, as "he alone was entrusted with the proper use of the investment money" which "provided him unfettered authority over the victims' investment[s]." *Id.* Finally, as to the third *Pardo* factor – reliance by victims on the defendant's integrity – we noted that Iannone had used his resume to build the trust of his victims, and had further "fostered reliance on his integrity by posing as a decorated Vietnam veteran." *Id.* Having concluded that all three *Pardo* factors were satisfied, we held that the District Court had properly applied the § 3B1.3 enhancement.

This case is on all fours with *Iannone*. Like Iannone, Edelman established himself as the sole proprietor of companies in which his victims would invest, and

8

it was through those entities that he fleeced them.[5]  The application of the *Pardo*

factors is also analogous.  Regarding the difficulty of detection, his sole

proprietorship of the ERECs, like Iannone's of his company, put Edelman in a

position of managerial control over the "investments," with no supervision,

making him the sole source of information about the "investments."  As to the

second factor, Edelman's case again neatly parallels Iannone's, with his complete

control over the ERECs conferring absolute authority over the disposition of his

victim's funds.  Finally, Edelman, like Iannone, used his resume to induce his

victims' reliance on his integrity, claiming via sales brochures and his website that

he had significant experience in real estate development, was a licensed real estate

appraiser, had an MBA in real estate finance from NYU, and had already secured

the participation of numerous other investors in the scheme.  Just as we gave

significant weight to Iannone's deception about his veteran status in concluding

that he "fostered reliance on his integrity," *id.*, so too Edelman's many deceptions

and distortions of the truth were rightly considered in concluding that he fostered

his victims' reliance on his integrity.[6]  Edelman was therefore eligible for the

---

[5] The PSR and the District Court concluded that Edelman was eligible for the § 3B1.3 enhancement for different reasons, and neither focused on Edelman's role as the sole proprietor of the ERECs.  Because the question of whether a position constitutes one of trust for the purposes of § 3B1.3 is one of pure law, *Babaria*, 775 F.3d at 595, "[w]e may affirm the District Court on any grounds supported by the record" and do so here.  *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc).

[6] Indeed, on this point, the District Court reached the same conclusion, addressing Edelman at sentencing by stating "[t]hey believed that you were

§ 3B1.3 enhancement, and there was no error in applying it in calculating his

Guidelines sentence.[7]

## III.    Conclusion

For the foregoing reasons, we will affirm.

---

exactly who you said you were.  That you had these years of experience.  And not only had those years of experience, but you had the degrees to go with it.  And all of this information you basically used to lure them in."  (App. 152-53).

[7] Having determined that a defendant occupied a position of trust, the § 3B1.3 analysis typically proceeds to the question of "whether he abused that position in a way that significantly facilitated his crime." *Babaria*, 775 F.3d at 596 (internal quotation marks omitted).  However, because Edelman did not raise this issue, it is waived.  *Albrecht v. Horn*, 485 F.3d 103, 113 n.3 (3d Cir. 2007) ("An issue that is not discussed in the briefs is waived.").